IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MILWAUKEE MUTUAL INSURANCE,<br>COMPANY, n/k/a MILWAUKEE<br>INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ARCHITECTURAL SEALANTS, INC.,<br>F.H. PASCHEN, S.N. NIELSEN, INC. and<br>BOARD OF TRUSTEES OF WILLIAM<br>RAINEY HARPER COLLEGE NO. 512, and<br>ILLINOIS CAPITAL DEVELOPMENT<br>BOARD, for the use and benefit of<br>BOARD OF TRUSTEES OF WILLIAM<br>RAINEY HARPER COLLEGE NO. 512<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**08cv0029**
**JUDGE ANDERSEN**
**MAG.JUDGE KEYS**



**FILED**

JAN - 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JAN 0 2 2008

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, MILWAUKEE MUTUAL INSURANCE COMPANY, n/k/a Milwaukee Insurance

Company, by its undersigned attorneys, Law Offices of Neal R. Novak, Ltd., and for its Complaint

for Declaratory Relief against the Defendants, Architectural Sealants, Inc. and F.H. Paschen, S.N.

Nielsen, Inc., alleges as follows:

### PARTIES

　　　1.　　Milwaukee Mutual Insurance Company, n/k/a Milwaukee Insurance Company

("Milwaukee"), is a wholly owned subsidiary of Mutual Insurers Holding Company of Brookfield,

Wisconsin, a mutual holding company organized under the laws of the State of Wisconsin with its

principal executive offices and place of business in Brookfield, Wisconsin.

　　　2.　　Architectural Sealants Inc. ("ASI") is an Illinois corporation with its principal place

of business in Monee, Illinois.

　　　3.　　F.H. Paschen, S.N. Nielsen, Inc. ("Paschen") is an Illinois corporation with its

principal place of business in Chicago, Illinois.

4.      Board of Trustees of William Rainey Harper College No. 512, and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 ("Underlying Plaintiffs") are plaintiffs in an action styled *Board of Trustees of William Rainey Harper College No. 512, and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 v. Burnidge, Cassell and Associates, Inc., and F.H.Paschen, S.N. Nielsen, Inc.*, No. 06 L 005812 pending in the Circuit Court of Cook County, Illinois and are nominal but necessary parties to this declaratory judgment action. They have been joined herein solely to be bound by the judgment to be rendered in this cause and no specific relief is sought against them. In the event that Underlying Plaintiffs stipulate and agree to be bound by the judgment entered in this cause, then Milwaukee will voluntarily dismiss them from this action. Milwaukee alleges on information and belief that the Underlying Plaintiffs are entities organized and existing under the laws of Illinois with their principal places of business in Palatine, Illinois and Springfield, Illinois respectively.

### JURISDICTION AND VENUE

5.      Jurisdiction in this matter is premised on diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy exceeds the sum of $75,000 exclusive of interests and costs as the claim involves a defense tender and request for indemnity in a case in which total damages are alleged to be over $2,280,000.

6.      Milwaukee brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201, *et seq.*

7.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1).

8.      By reasons of the allegations set forth below, a real, immediate and justiciable controversy exists between Milwaukee, ASI and Paschen and will continue to exist between the parties until such time as it is resolved by this Court.

## FACTUAL BACKGROUND

9.    Milwaukee issued Policy No. CPP30776540182 to Architectural Sealants, Inc. for the period October 17, 1999 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 1999 Primary Policy is attached hereto as Exhibit A.

10.    Milwaukee issued Umbrella Policy No. UO 30776540082 to Architectural Sealants, Inc. for the period October 17, 1999 until cancelled with an aggregate limit of $5,000,000 and a self-insured retention of $10,000. A true and correct copy of the 1999 Umbrella Policy is attached hereto as Exhibit B.

11.    Milwaukee issued Policy No. CPP30811530082 to ASI for the period October 17, 2000 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2000 Primary Policy is attached hereto as Exhibit C.

12.    Milwaukee issued Policy No. CPP30811530182 to ASI for the period October 17, 2001 until cancelled with limits of $1,000,000 in the occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2001 Primary Policy is attached hereto as Exhibit D.

13.    Milwaukee issued Policy No. CPP 30811530282 to ASI for the period October 17, 2002 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2001 Primary Policy is attached hereto as Exhibit E.

14.    Upon information and belief, Illinois Capital Development Board entered into a contract with Paschen providing that Paschen would be the general contractor for a project at the Performing Arts Center and the Conference Center at Harper College.

15.    Upon information and belief, ASI entered into a subcontract ("Subcontract") with Paschen on June 21, 2000. Pursuant to the Subcontract, ASI was to perform the following tasks at the Performing Arts Center and at the Conference Center at Harper College: bentonite waterproofing was to be applied to the concrete foundation walls and concrete slabs; joint sealants were to be applied to exterior stoops and driveways, slab on grade control joints, interior and exterior masonry

3

expansion joints, interior and exterior precast joints, masonry/precast joints, masonry/precast to existing building joints, interior and exterior hollow metal doors, interior slab edge to masonry and precast walls, interior masonry walls to precast wall panels, and stair stringers. A true and correct copy of the Subcontract is attached hereto as Exhibit F.

16.    On June 5, 2006, the Illinois Capital Development Board filed a complaint styled, *Board of Trustees of William Rainey Harper College No. 512, and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 v. Burnidge, Cassell and Associates, Inc., and F.H.Paschen, S.N. Nielsen, Inc.* ("the Underlying Lawsuit"). A true and correct copy of the Underlying Lawsuit is attached hereto as Exhibit G.

17.    In the Underlying Lawsuit, the Underlying Plaintiffs allege that Paschen breached its express and implied contractual obligations which caused damage including, but not limited to, recessed floor slabs in the auditorium that allowed water intrusion and caused rusting of bolts near a wheelchair lift, improper construction of masonry walls leading to cracking and water infiltration, and leakage of the conference center curtain walls and the dining room roof.

18.    On August 7, 2007, Paschen filed a Third-Party Complaint against a number of parties including ASI. A true and correct copy of the Third Party Complaint is attached hereto as Exhibit H.

19.    In the Third Party Complaint, Paschen alleges that ASI breached the subcontract by failing to perform its work in a workmanlike manner, free from defects, and/or in conformity with the Subcontract and other project documents. Paschen seeks indemnification from ASI and other relief.

20.    By letter dated September 12, 2007, Paschen, through its counsel, tendered its defense of the Underlying Lawsuit to ASI and ASI's insurance carriers, including Milwaukee. A true and correct copy of Paschen's tender letter is attached hereto as Exhibit I.

4

21.    By letter dated December 28, 2007 Milwaukee denied Paschen's tender on the

following grounds:

    a.    there are no allegations in the Underlying Lawsuit constituting "property damage" or "occurrence" as those terms are defined;

    b.    even if there was "property damage" caused by an "occurrence," it is unclear that the damage occurred during the relevant policy periods;

    c.    coverage is precluded based on Exclusions j(5) , j(6), l, and/or m; and

    d.    coverage is barred for failure to give proper notice.

A true and correct copy of the denial letter to Paschen is attached hereto as Exhibit J.

22.    By letter received December 6, 2007, ASI tendered its defense of the Third Party

Complaint to Milwaukee.  A true and correct copy of ASI's tender letter is attached hereto as Exhibit

K.

23.    By letter dated December 28, 2007 Milwaukee denied ASI's tender on the following

grounds:

    a.    there are no allegations in the Underlying Lawsuit constituting "property damage" or "occurrence" as those terms are defined;

    b.    even if there was "property damage" caused by an "occurrence," it is unclear that the damage occurred during the relevant policy periods;

    c.    coverage is precluded based on Exclusions j(5) , j(6), l, and/or m; and

    d.    coverage is barred for failure to give proper notice.

A true and correct copy of the denial letter to ASI is attached hereto as Exhibit L.

## COUNT I
### (ASI - No Property Damage/No Occurence)

24.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs

1 through 23 as though they were fully set forth herein.

25.    The Insuring Agreements of the Policies provide:

5

We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. . .

\* \* \*

This insurance applies to . . . "property damage" only if:

(1)    The . . . "property damage" is caused by an "occurrence" . . . ; and

(2)    The . . . "property damage" occurs during the policy period.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

26.    The Complaint does not allege "property damage" caused by an "occurrence" in that repair and replacement costs constitute economic loss, not "property damage" and construction defects do not constitute an accident or "occurrence." Thus, Milwaukee has no duty to defend ASI under the Policies.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.    Declaring that Milwaukee has no duty to defend or indemnify ASI in the Underlying Lawsuit because property damage and/or an occurrence has not been alleged; and

B.    Granting such other and further relief as this Court may deem just and proper under the circumstances.

6

## COUNT II
### (ASI – Policies Not Triggered)

27.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 25 as though they were fully set forth herein.

28.    The Underlying Lawsuit does not identify the date(s) when the "property damage" allegedly occurred.

29.    Since there are no allegations that "property damage" occurred during the policy periods, the Policies are not triggered and there is no coverage available to ASI thereunder.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.    Declaring that Milwaukee has no duty to defend or indemnify ASI in the Underlying Lawsuit there are no allegations of property damage occurring during the relevant policy period(s); and

B.    Granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT III
### (ASI – Coverage Exclusions)

30.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

31.    Section I of the Policies at Exclusions, paragraph j, excludes coverage for "Damage to Property" as follows:

(5)    that particular part of real property on which you . . . are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

32.     If the Policies are triggered, coverage is excluded pursuant to Paragraphs j(5) and

j(6).

33.     Section I of the Policies at Exclusions, paragraph l, excludes coverage for "Damage

to Your Work" as follows:

> "Property damage" to "your work" arising out of it or any part of it and
> included in the "products completed operations hazard". This exclusion does
> not apply if the damaged work or the work out of which the damage arises
> was performed on your behalf by a subcontractor.

34.     If the Policies are triggered, to the extent that the alleged "property damage" occurred

after ASI completed its work, there is no coverage available to ASI under the Policies pursuant to

Paragraph l.

35.     Section I of the Policies at Exclusions, paragraph m, excludes coverage for "Damage

to Impaired Property or Property not Physically Injured" as follows:

> "property damage" to "impaired property" or property that has not been
> physically injured, arising out of:
>
> (1)     A defect, deficiency, inadequacy or dangerous condition in "your
>         product" or "your work" . . . .

"Impaired property" is defined as "tangible property, other than 'your product' or 'your work' that is

known or thought to be defective, deficient . . . if such property can be restored to use by: a. the

repair, replacement, adjustment or removal of 'your product' or 'your work'. . . ."

36.     If the Policies are triggered, coverage is excluded pursuant to Paragraph m.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against

Defendant by:

A.     Declaring that Milwaukee has no duty to defend or indemnify ASI in the Underlying

Lawsuit under the Policies pursuant to the aforementioned exclusions; and

B.     Granting such other and further relief as this Court may deem just and proper under

the circumstances.

8

## COUNT IV
### (ASI - Late Notice)

37.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

38.    Condition 2 of the Policies provides that "you" must notify Milwaukee as soon as practicable of (1) an "occurrence" that may result in a claim; (2) a claim that has been made; or (3) "suit" that has been brought against any insured.  Condition 2(c) requires all insureds to "immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'."

39.    Milwaukee was not notified of the occurrence or the Underlying Lawsuit until more than one year after litigation had commenced on June 5, 2006 and nearly 2 months after the filing of the Third Party Complaint.  Thus, coverage is barred based on Condition 2.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.    Declaring that Milwaukee has no duty to defend or indemnify ASI in the Underlying Lawsuit under the Policies due to breach of the notice provisions; and

B.    Granting such other and further relief as this Court may deem just and proper under the circumstances.

## COUNT V
### (Paschen - No Property Damage/No Occurence)

40.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

41.    The Insuring Agreements of the Policies provide:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. . .

\* \* \*

This insurance applies to . . . "property damage" only if:

(1)     The . . . "property damage" is caused by an "occurrence" . . . ; and

(3)     The . . . "property damage" occurs during the policy period.

'Occurrence' is defined as "an accident, including continuous or repeated exposure to substantially

the same general harmful conditions." "Property damage" is defined as:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

42.     The Complaint does not allege "property damage" caused by an "occurrence" in that repair and replacement costs constitute economic loss, not "property damage" and construction defects do not constitute an accident or "occurrence." Thus, Milwaukee has no duty to defend Paschen under the Policies.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.     Declaring that Milwaukee has no duty to defend or indemnify Paschen in the Underlying Lawsuit because property damage and/or an occurrence has not been alleged; and

B.     Granting such other and further relief as this Court may deem just and proper under the circumstances.

### COUNT VI
### (Paschen – Policies Not Triggered)

43.     Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 and 41 as though they were fully set forth herein.

44.     The Underlying Lawsuit does not identify the date(s) when the "property damage" allegedly occurred.

10

45.     Since there are no allegations that "property damage" occurred during the policy periods, the Policies are not triggered and there is no coverage available to Paschen thereunder.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.      Declaring that Milwaukee has no duty to defend or indemnify Paschen in the Underlying Lawsuit because there are no allegations of property damage occurring during the relevant policy period(s); and

B.      Granting such other and further relief as this Court may deem just and proper under the circumstances.

### COUNT VII
### (Paschen – Coverage Exclusions)

46.     Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

47.     Section I of the Policies at Exclusions, paragraph j, excludes coverage for "Damage to Property" as follows:

> (5)     that particular part of real property on which you . . . are performing operations, if the "property damage" arises out of those operations; or

> (6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

48.     If the Policies are triggered, coverage is excluded pursuant to Paragraphs j(5) and j(6).

49.     Section I of the Policies at Exclusions, paragraph l, excludes coverage for "Damage to Your Work" as follows:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

11

50.    If the Policies are triggered, to the extent that the alleged "property damage" occurred after ASI completed its work, there is no coverage available to Paschen under the Policies pursuant to Paragraph l.

51.    Section I of the Policies at Exclusions, paragraph m, excludes coverage for "Damage to Impaired Property or Property not Physically Injured" as follows:

> "property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" . . . .

"Impaired property" is defined as "tangible property, other than 'your product' or 'your work' that is known or thought to be defective, deficient . . . if such property can be restored to use by: a. the repair, replacement, adjustment or removal of 'your product' or 'your work'. . . ."

52.    If the Policies are triggered, coverage is excluded pursuant to Paragraph m.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.    Declaring that Milwaukee has no duty to defend or indemnify Paschen in the Underlying Lawsuit under the Policies pursuant to the aforementioned exclusions; and

B.    Granting such other and further relief as this Court may deem just and proper under the circumstances.

### COUNT VIII
### (Paschen - Late Notice)

53.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

54.    Condition 2 of the Policies provides that "you" must notify Milwaukee as soon as practicable of (1) an "occurrence" that may result in a claim; (2) a claim that has been made; or (3) "suit" that has been brought against any insured.  Condition 2(c) requires all insureds to

"immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'."

55.     Milwaukee was not notified of the occurrence or the Underlying Lawsuit and did not receive copies of any notices, summonses or legal papers until more than one year after litigation had commenced and after settlement negotiations had taken place.   Thus, coverage is barred based on Condition 2.

WHEREFORE, Milwaukee prays that this Court enter a judgment in its favor and against Defendant by:

A.     Declaring that Milwaukee has no duty to defend or indemnify Paschen in the Underlying Lawsuit under the Policies due to its breach of the notice provisions; and

B.     Granting such other and further relief as this Court may deem just and proper under the circumstances.

MILWAUKEE MUTUAL INSURANCE COMPANY
n/k/a MILWAUKEE INSURANCE COMPANY

By: _____
One of Its Attorneys


**LAW OFFICES OF NEAL R. NOVAK, LTD.**
Neal R. Novak, Esq. (#06181620)
Matthew R. Wildermuth (#06202106)
Karen Andersen Moran, Esq. (#06224382)
Mary C. Clifford, Esq. (#06281193)
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
(312) 425-2500 Telephone
(312) 425-2525 Facsimile

# Exhibit A

*Commercial General Liability Declarations*



**MILWAUKEE INSURANCE**

480MEJ                                    Company Copy

## THIS IS AN OCCURRENCE POLICY

**Coverage provided by:**

MILWAUKEE MUTUAL INSURANCE COMPANY

**Declarations:**

ENDORSEMENT

**Named Insured and Mailing Address:**

ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL 60449

**Policy Number:**

CPP30776540182

**Replaces Previous Policy Number:**

CPP30776540082

**Legal Status:**

CORPORATION

**Business Description:**

COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

**Agency Number and Name:**

11 3096     THILMAN & FILIPPINI, LLC (C)

*TERMINATED*
*10-17-00*

**Policy Period:**

From: 10/17/1999     to: Until Cancelled  . at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Description of Premises:**   SEE ATTACHED SCHEDULE GLSCD

**Coverages Provided:**   SEE ATTACHED SCHEDULE GLSCD

**Limits of Insurance:** *Coverage is provided where a limit of liability is shown for the coverage.*

| | |
|---|---:|
| Each Occurrence Limit: | $ 1,000,000 |
| General Aggregate Limit (other than Products-Completed Operations): | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit: | $ 2,000,000 |
| Medical Expense Limit: | $ 5,000 |
| Personal & Advertising Injury Limit: | $ 1,000,000 |
| Fire Damage Limit: | $ 100,000 |

**Total Premium:   AS BILLED**

### * AMENDMENT INFORMATION *

Effective:  10/17/1999          Premium Adjustment:  NIL

FORM CG0300 IS ADDED AND FORM 12278 IS AMENDED.

## *Endorsements Applicable:*

| | | | |
|---|---|---|---|
| GLSCD 0394 | CG0001 0798 | CG0200 0487 | CG2147 0798 |
| IL0003 0498 | IL0017 1198 | IL0021 1185 | 33-0481 0399 |
| 12278 1097 | CG0300 0196 | | |

---

*Location of all premises you own, rent or occupy:*  SEE ATTACHED SCHEDULE GLSCD

---

*Date of Issue:* 03/02/2000

---
*Countersigned by Authorized Representative*

## Additional Insured - Primary Coverage

### This endorsement changes the policy. Please read it carefully.

**Name of Person or Organization:**

BLANKET PRIMARY NON-CONTRIBUTORY ADDL
INSUREDS APPLY WHEN REQUIRED BY CONTRACT
& ON FILE WITH MILWAUKEE INSURANCE

WHO IS AN INSURED (Section II) is amended to
include as an insured the person or organization
shown in the schedule, but only with respect to
liability arising out of your work for that insured by or
for you.

Furthermore, the following is added to **SECTION IV
COMMERCIAL GENERAL LIABILITY
CONDITIONS** paragraph 4, Other Insurance:

4.  Other Insurance
    This insurance is primary for the person or
    organization, shown in the schedule, but only with
    respect to liability arising out of your work for that
    insured by or for you. Other insurance afforded to
    that insured will apply as excess and not
    contribute as primary to the insurance afforded by
    this endorsement.

*In all other respects the terms, limits and
conditions of this policy remain unchanged.*

12278 1097

## *Deductible Liability Insurance*

Page 1 of 2

Company Copy

### *This endorsement changes the policy. Please read it carefully.*

Policy Number: CPP30776540182

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### \* S C H E D U L E \*

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | Per Claim   or | Per Occurrence |
| **Bodily Injury Liability** | | |
| OR | | |
| **Property Damage Liability** | | $ 500 |
| OR | | |
| **Bodily Injury Liability and/or Property Damage Liability Combined** | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**  (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence."

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

CG0300 0196

Copyright, Insurance Services Office, Inc., 1994

With respect to "property damage", person includes an organization.

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence."

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

**Commercial General Liability Declarations**

 **MILWAUKEE INSURANCE**

750MEM                                    Company Copy

### THIS IS AN OCCURRENCE POLICY

**Coverage provided by:**
MILWAUKEE MUTUAL INSURANCE COMPANY

**Declarations:**
RENEWAL

**Named Insured and Mailing Address:**
ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL 60449

**Policy Number:**
CPP30776540182

**Replaces Previous Policy Number:**
CPP30776540082

**Legal Status:**
CORPORATION

**Business Description:**
COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

**Agency Number and Name:**
11 3096    THILMAN & FILIPPINI, LLC (C)

**Policy Period:**

From: 10/17/1999    to: Until Cancelled    at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Description of Premises:**  SEE ATTACHED SCHEDULE GLSCD

**Coverages Provided:**    SEE ATTACHED SCHEDULE GLSCD

**Limits of Insurance:** *Coverage is provided where a limit of liability is shown for the coverage.*

| | |
|---|---:|
| Each Occurrence Limit: | $ 1,000,000 |
| General Aggregate Limit (other than Products-Completed Operations): | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit: | $ 2,000,000 |
| Medical Expense Limit: | $ 5,000 |
| Personal & Advertising Injury Limit: | $ 1,000,000 |
| Fire Damage Limit: | $ 100,000 |

**Total Premium:    AS BILLED**

### * AMENDMENT INFORMATION *

Effective:                Premium Adjustment:

GLDEC 03/94

GLDEC 03/94

## *Endorsements Applicable:*

| | | | |
|---|---|---|---|
| GLSCD 0394 | CG0001 0798 | CG0200 0487 | CG2147 0798 |
| IL0003 0498 | IL0017 1198 | IL0021 1185 | 33-0481 0399 |
| 12278 1097 | | | |

*Location of all premises you own, rent or occupy:*   SEE ATTACHED SCHEDULE GLSCD

*Date of Issue:* 12/11/1999

*Countersigned by Authorized Representative*

## *General Liability Schedule*

Company Copy

**Policy Number:** CPP30776540182

### *Location of Premises*

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

#

#

| Prem. & Bldg. | Classification | Code Number | Premises Operations | Products Completed Operations | Owners Contractors Protective | Railroad Protective |
|---|---|---|---|---|---|---|
| 001 001 | PAINT-EXTERIOR-EXC 3 STORY-NOC | 98303 | X | X | | |
| 001 001 | CONTR-EXECUTIVE SUPERVISOR PROD/COMP OP SUBJ TO GEN AGG LIMIT | 91580 | X | X | | |
| 001 001 | PAINT-EXTERIOR-3/LESS STY-NOC | 98304 | X | X | | |
| 001 001 | PAINT-INTERIOR-BLDG/STRUCTURE | 98305 | X | X | | |

| Prem. & Bldg. | Premium Basis | | |
|---|---|---|---|
| | Exposure | Premium Base | Exposure Base |
| 001 001 | $ 18,600 | PAYROLL | PER 1000 |
| 001 001 | $ 150,000 | PAYROLL | PER 1000 |
| 001 001 | $ 200,000 | PAYROLL | PER 1000 |
| 001 001 | $ 125,000 | PAYROLL | PER 1000 |

GLSCD 03/94

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997  CG 00 01 07 98  □

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

  (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

  (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

  (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

  (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

  (4) Arising out of a criminal act committed by or at the direction of any insured;

  (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

  (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

  (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

  (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

  (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

  (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

  (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

  (1) On premises you own or rent;

  (2) On ways next to premises you own or rent; or

  (3) Because of your operations;

provided that:

  (1) The accident takes place in the "coverage territory" and during the policy period;

  (2) The expenses are incurred and reported to us within one year of the date of the accident; and

  (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage **A**.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

     (a) Cooperate with us in the investigation, settlement or defense of the "suit";

     (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     (c) Notify any other insurer whose coverage is available to the indemnitee; and

     (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    ☐

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        (1) "Bodily injury" or "personal and advertising injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) "Property damage" to property:

            (a) Owned, occupied or used by,

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

 Copyright, Insurance Services Office, Inc., 1997   ☐

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

 Copyright, Insurance Services Office, Inc., 1997 ☐

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    ▯

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(1)** You;

      **(2)** Others trading under your name; or

      **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **b.** The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. CANCELLATION (Common Policy Conditions) is replaced by the following:**

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least;

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B. The following is added and supercedes any provision to the contrary:**

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   a. You; and

   b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   a. On the expiration date, if:

      (1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      (2) We have indicated our willingness to renew this policy to you or your representative; or

      (3) You have notified us or our agent that you do not want to renew this policy.

   b. On the effective date of any other insurance replacing this policy.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1987, 1992
**Page 1 of 1**   ☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

INTERLINE
IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85          Copyright, Insurance Services Office, Inc.,  1983, 1984          Page 1 of 2      □

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# CONTRACTORS COVERAGE EXPANSION ENDORSEMENT

### This Endorsement Changes The Policy.  Please Read it Carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## (1)  AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

## (2) AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your "locations" owned by or rented to you.

"Locations" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way railroad.

## (3) MEDICAL PAYMENTS

Subject to all the times of SECTION III – LIMITS OF INSURANCE, the Medical Expense Limit is the higher of:

a.  $10,000; or

b.  The amount shown in the Declarations for Medical Expense Limit.

This provision does not apply if COVERAGE C. MEDICAL PAYMENTS is excluded either by the provisions of the Coverage Part or by endorsement.

## (4) ADDITIONAL INSURED BY CONTRACT OR AGREEMENT

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Each of the following is also an insured:

    a.  Any person or organization you are required by a written contract, agreement, or permit to name as an insured, but only with respect to liability arising out of:

        1.  "your work" performed for that insured at the location designated in the contract, agreement, or permit; or

        2.  premises owned or used by you.

    b.  This insurance does not apply unless the contract, agreement, or permit is made prior to the "bodily injury" or "property damage".

## (5) WAIVER OF SUBROGATION

Under SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, the following is added to Condition 8. Transfer of Rights of Recovery Against Others to Us:

If you have waived those rights before a loss, our rights are waived also.

## (6) NAMED INSURED

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Any organization over which you maintain ownership of more than 50% will be a Named Insured if there is no other similar insurance available to that organization.  However,

    a.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    b.  Coverages B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

**(7) NEWLY FORMED OR ACQUIRED ORGANIZATION**

In paragraph **4.a.** SECTION II – WHO IS AN INSURED, "90th day is changed to 180th day".

This provision does not apply if newly formed or acquired organizations' coverage is excluded either by provision of the Coverage Part or by endorsement.

**(8) LIMITED PROFESSIONAL LIABILITY**

The following is added to paragraph **2.,** Exclusions of COVERAGES A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph **2.,** Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

**(9) NON-OWNED WATERCRAFT**

Exclusion **g.** of COVERAGE A (Section I) does not apply to any watercraft under 51 feet long that is neither:

    **a.** Owned by you; nor

    **b.** Being used to carry persons or property for a charge

This provision applies to any person, who with your consent, either uses or its responsible for the use of a watercraft.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess, or contingent.

**(10) CONTRACTUAL LIABILITY FOR PERSONAL INJURY AND ADVERTISING INJURY**

Exclusion **a.(4)** of Coverage B (SECTION I) is deleted.

**(11) BROAD NOTICE OF OCCURRENCE**

Paragraph **2.a.** of the Duties In The Event of Occurrence, Offense, Claim or Suit Condition (SECTION IV) is deleted and replaced by the following:

You must see to it we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless your partners, "executive officers", directors or insurance manager shall have actually received notice. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and,

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.


## (12) UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

Based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not deny coverage under this Coverage Part because of such failure.

## (13) NOTICE OF OCCURRENCE

The following is added to the Duties In The Event of Occurrence, Offense, Claim or Suit CONDITION, (SECTION IV):

**a.** If you report an "occurrence" to your workers' compensation insurer which develops into a liability claim for which coverage is provided by this Coverage Part, failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of paragraphs a., b., and c. above. However, you shall give written notice of this "occurrence" to us as soon as you are made aware of the fact that this "occurrence" is a liability claim rather than a workers' compensation claim.

## *Additional Insured - Primary Coverage*

Page 1

Company Copy

### *This endorsement changes the policy. Please read it carefully.*

**Name of Person or Organization:**

SKENDER CONSTRUCTION COMPANY
10101 ROBERTS ROAD
PALOS HILLS, IL 60465-1556

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the schedule, but only with respect to liability arising out of your work for that insured by or for you.

Furthermore, the following is added to **SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS** paragraph 4, Other Insurance:

**4.** Other Insurance
This insurance is primary for the person or organization, shown in the schedule, but only with respect to liability arising out of your work for that insured by or for you. Other insurance afforded to that insured will apply as excess and not contribute as primary to the insurance afforded by this endorsement.

*In all other respects the terms, limits and conditions of this policy remain unchanged.*

12278 1097

# Exhibit B

## **CERTIFICATION**

State of Texas )
) ss.
Dallas County )

Policy Number:  UO 3077654 01 82          Company:  Milwaukee Mutual Insurance
Named Insured:  Architectural Sealants, Inc.      As of Date or Period: 10/17/99 to 10/17/00
Boardwalk Construction Management, Inc

____Debbie Dodson_____, being first duly sworn on oath, deposes and says that:

1.  I am Operations Supervisor of Unitrin Business Insurance, and a fully authorized representative of the above named, affiliated Company.   As such, I have full access to the insurance records and files for the identified policy of insurance issued by the Company.

*(select either)*

☒  2.  I have reviewed and compared the attached pages to such records and files and hereby certify that with the exception of any forms or endorsements identified in paragraph 3, the same are a true and correct copy of the above identified policy of insurance as reflected in the Company's records and files as of the above date.

or

☐  2.  I have reviewed and compared the attached pages to such records and files and hereby certify that with the exception of any forms or endorsements identified in paragraph 3, the same are a true and correct copy of the above identified policy of insurance as reflected in the Company's records and files. The above policy was cancelled on        .*(insert effective date of cancellation)*

*(select either)*

☒  3.  The attached copy does not vary from the above identified policy.

or

☐  3.  The attached copy varies from the above identified policy, as follows:

| The original form or endorsement no. | Varies from the attached form or endorsement no. | Because (*state reason for variance*) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Dated this 4th day of October, 2007.

Signed and sworn to before me on the above
date by _____

_____
Notary Public, State of Texas
My Commission _____

_____
**Debbie Dodson**

10/4/2007

DANIELLE M KAZMIERCZAK
Notary Public, State of Texas
My Commission Expires
January 24, 2011

## Commercial Umbrella Liability
### Declarations - Occurrence Version



**MILWAUKEE INSURANCE**

Company Copy

750MEM

**Coverage provided by:**
MILWAUKEE MUTUAL INSURANCE COMPANY

**Declarations:**
RENEWAL

**Named Insured and Mailing Address:**
ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL 60449

**Policy Number:**
UO 30776540182

**Replaces Previous Policy Number:**
UO 30776540082

**Business Description:**
COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

10-17-00

**Agency Number and Name:**
11 3096     THILMAN & FILIPPINI, LLC (C)

**Policy Period:**
From: 10/17/1999    to: 10/17/2000     at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

### Limits of Insurance

Policy Aggregate Limit  $ 5,000,000

Self-Insured Retention   $ 10,000     (Each Occurrence or Offense not Covered by Underlying Insurance)

**Advance Premium: $ 2,300**

### Schedule of Underlying Insurance

| Type of Policy | Insurer, Policy No. & Period | Limit of Liability |
|---|---|---|
| COMMERCIAL LIABILITY | MILWAUKEE MUTUAL INSURANCE COMPANY<br>CPP30776540182<br>10/17/1999<br>Until Cancelled | $ 2,000,000 Gen Agg<br>$ 2,000,000 P C/O Agg<br>$ 1,000,000 Ea Occ |
| COMMERCIAL ISO AUTO | MILWAUKEE MUTUAL INSURANCE COMPANY<br>CPP30776540182<br>10/17/1999<br>Until Cancelled | $ 1,000,000 BI/PD CSL |
| WORKERS' COMPENSATION | MILWAUKEE MUTUAL INSURANCE COMPANY<br>WC 30776540182<br>10/17/1999<br>10/17/2000 | $ 1,000,000 Ea Acc<br>$ 1,000,000 Ea Empl<br>$ 1,000,000 Pol Limit |

**\* AMENDMENT INFORMATION \***

Effective:          Premium Adjustment:

UM DEC 0197

**Forms and Endorsements Applicable:**

| | | | | |
|---|---|---|---|---|
| 12100 0197 | 12107 0197 | 12112 0197 | 12115 0197 | 12133 0197 |
| 12153 0197 | 12167 0197 | 12172 0197 | 12279 1297 | 12288 0198 |

**Date of Issue:** 12/11/1999

_Countersigned by Authorized Representative_

## Commercial Umbrella

### Please Read The Policy Carefully.

#### QUICK REFERENCE

BEGINNING
ON PAGE

BEGINNING
ON PAGE

**DECLARATIONS PAGE**
Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

**SECTION I - INSURING AGREEMENTS** ................. 2

**COVERAGE A. BODILY INJURY AND
PROPERTY DAMAGE LIABILITY** ............................ 2
Insuring Agreement ............................................. 2
Exclusions ............................................................ 3

**COVERAGE B. PERSONAL AND ADVERTISING
INJURY LIABILITY** ............................................... 8
Insuring Agreement ............................................. 8
Exclusions ............................................................ 8

**SECTION II - DEFENSE** ......................................... 9

**SECTION III - WHO IS AN INSURED** ..................... 10

**SECTION IV - LIMIT OF INSURANCE** .................... 12

**SECTION V - CONDITIONS** ..................................... 13
1. Appeals .......................................................... 13
2. Bankruptcy ..................................................... 13
3. Cancellation .................................................... 13

**SECTION V - CONDITIONS** cont'd ......................... 13
4. Changes ......................................................... 13
5. Duties In The Event of "Occurrence
   Offense", "Claim" or "Suit" ............................. 13
6. Examination of Your Books and Records ..... 14
7. Inspection and Surveys .................................. 14
8. Legal Action Against Us ................................. 14
9. Maintenance of Underlying Insurance .......... 14
10. Other Insurance ............................................. 15
11. Premium Audit ............................................... 15
12. Premiums ....................................................... 15
13. Representations ............................................. 15
14. Separation of Insureds .................................. 15
15. Sole Agent ..................................................... 15
16. Transfer of Rights of Recovery Against
    Others to Us .................................................. 15
17. Transfer of Your Rights and Duties
    Under This, Policy .......................................... 16
18. When Loss Payable ........................................ 16
19. When We Do Not Renew ................................ 16

**SECTION VI - DEFINITIONS** .................................. 16

12100 0197

THIS POLICY IS NOT DESIGNED FOR USE WITH CLAIMS MADE UNDERLYING POLICIES. PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS - SECTION V - OF THIS POLICY.

The words "you" and "your" in this policy refer to the Named Insured shown in the Declarations and all other persons or organizations qualifying as named insureds under this policy. The words "we", "us", and "our" refer to The Company providing this insurance. The word "insured" means any person or organization qualifying as such under SECTION III – WHO IS AN INSURED, beginning on page 10.

All words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI - DEFINITIONS, beginning on page 16.

## SECTION I – INSURING AGREEMENTS

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay on behalf of the insured for "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

      (1) The amount we will indemnify for "ultimate net loss" is limited as described in SECTION IV – LIMIT OF INSURANCE;

      (2) At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

      (3) We have a duty to defend the insured against any "suits" to which this insurance applies:

         (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other applicable primary policies that may apply; or

         (b) If the applicable limit of "underlying insurance" is exhausted.

         However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

      (4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

      No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II – DEFENSE.

   b. It is agreed that this insurance only applies if:

      (1) The "bodily injury" or "property damage" occurs during the policy period of this policy;

      (2) With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

         (a) And "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

         (b) An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

      (3) The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

   c. "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" for which coverage is provided by "underlying insurance" written on a claims made basis, including any renewal or replacement of such policy.

**b.** "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**c.** "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or

   **(2)** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

      **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

      **(c)** The indemnitor insured's "underlying insurance" also deems these expenses to be damages.

**d.** Liability imposed on the insured or the insured's insurer, under any of the following

   **(1)** Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

   **(2)** Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

   **(3)** Any workers compensation, unemployment compensation or disability benefits law or any similar law.

**e.** The insured's liability (other than under an "insured contract") for "bodily injury" to;

   **(1)** An "employee" of the insured arising out of and in the course of:

      **(a)** Employment by the insured; or

      **(b)** Performing duties related to the conduct of the insured's business; or

   **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

But this exclusion e(1) and (2) applies only with respect to:

   **(1)** "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non- appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

   **(2)** "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

   **(3)** "Bodily injury" to a master or member of the crew of any vessel;

12100 0197

laws:

(4) Fines or penalties imposed for violation of federal or state law;

(5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws;

(6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

(7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

(8) "Bodily injury" to an employee, if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

f. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

g. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

(a) That are, or that are contained in any property that is:

(i) Being transported or towed by, handled, or handled for movement into, or from an "auto" covered by "underlying insurance";

(ii) Otherwise in the course of transit (by or on behalf) of the insured; or

(iii) Being stored, disposed of, treated or processed in or upon an "auto" covered by "underlying insurance";

(b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured;

(c) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of "waste";

(d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as "waste" by or for any insured or any person or organization for whom any insured may be legally responsible; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of "pollutants"; or

(b) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes materials to be recycled, reconditioned or reclaimed.

Paragraph g.(1)(e)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Paragraphs g.(1)(a) through g.(1)(d) and g.(1)(e)(i) do not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical

functioning of an "auto" covered by "underlying insurance", or the parts of such an "auto", if:

(1) The "pollutants" escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment".

Paragraphs g.(1)(c) through g.(1)(e) do not apply to "pollutants" that are not in or upon an "auto" covered by "underlying insurance" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" covered by "underlying insurance"; and

(2) The discharge, dispersal, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Paragraphs g.(1)(b) and g.(1)(e)(i) of this exclusion do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire". As used herein, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

h. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) Watercraft you do not own that are:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

i.  "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or any "auto" in or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

j.  Liability assumed under any "insured contract" for "bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution, or acts of terrorism.

k.  "Property damage" to:

    (1) Property you own;

    (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    (3) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

    (4) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

    Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement

    Paragraph (4) of this exclusion does not apply to "property damage" included in the products-completed "operations hazard".

l.  "Property damage" to "your product" arising out of it or any part of it.

m.  "Property damage" to "your work" arising out of it or any part of it and included in the products-completed "operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n.  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1) "Your product";

    (2) "Your work"; or

    (3) "Impaired property";

    if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p.  "Bodily injury" or "property damage":

    (1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material", if:

   (a) The "nuclear material"

      (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

      (ii) Has been discharged or dispersed therefrom;

   (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(5) "Waste" means any waste material:

   (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

   (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means.

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for:

      (i) Separating the isotopes of uranium or plutonium,

      (ii) Processing or utilizing "spent fuel", or

      (iii) Handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions g., h., and i. do not apply.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will indemnify the insured for "ultimate net loss" in excess of the "retained limit" because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

(1) The amount we will indemnify for "ultimate net loss" is limited as described in SECTION IV - LIMIT OF INSURANCE;

(2) At our discretion, we may investigate any "offense" and settle any resulting "claim" or "suit";

(3) We have a duty to defend the insured against any "suits" to which this insurance applies:

(a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other applicable primary policies that may apply; or

(b) If the applicable limit of "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

(4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE.

b. This insurance applies to:

(1) "Personal injury" caused by an "offense" arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

(2) "Advertising injury" caused by an "offense" committed in the course of advertising your goods, products or services;

but only if the "offense" was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) For which coverage is provided by "underlying insurance" written on a claims made basis, including any renewal or replacement of such policy;

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(6) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time.

b. "Advertising injury" arising out of:

   (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2) The failure of goods, products or services to conform with advertised quality or performance;

   (3) The wrong description of the price of goods, products or services; or

   (4) An "offense" committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of "pollutants"; or

   (b) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes materials to be recycled, reconditioned or reclaimed.

d. "Personal injury" to:

   (1) A person arising out of any:

     (a) Refusal to employ that person;

     (b) Termination of that person's employment; or

     (c) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom

any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal injury".

## SECTION II – DEFENSE

When we:

(i) Have the duty to defend; or

(ii) Investigate or settle any "offense", "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items 1 through 6.

we will indemnify the insured for:

1. Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the insured in any "suit" we defend.

5. "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not indemnify the insured for any "prejudgment interest" imposed or earned after the date of such offer.

6. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have indemnified the insured, offered to indemnify, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

1. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

2. This insurance applies to such liability assumed by the insured;

3. The obligation to defend, or the cost of the defense of that indemnitee, has also been assumed by the insured in the same "insured contract";

4. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

5. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

6. The indemnitee:

   a. Agrees in writing to:

      (1) Cooperate with us in the investigation, settlement or defense of the "suit";

      (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (3) Notify any other insurer whose coverage is available to the indemnitee; and

      (4) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   b. Provides us with written authorization to:

      (1) Obtain records and other information related to the "suit"; and

      (2) Conduct and control the defense of the indemnitee in such "suit";

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.c.(2) of Coverage A. - Bodily Injury and Property Damage Liability (Section I - Insuring Agreements), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

1. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

2. The conditions set forth above, or the terms of the agreement described in paragraph 6. above, are no longer met.

### SECTION III - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership of joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Except with respect to:

   a. Any "auto"; or

   b. "Mobile equipment" registered in your name under any motor vehicle registration law;

each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (1)(b) above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee") or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**e.** Any person or organization qualifying as an insured under any policy of "underlying insurance". Coverage afforded such insureds under this policy applies only to injury or damage:

**(1)** Which is covered by this policy; and

**(2)** Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

This policy shall not afford such person or organization limits of insurance in excess of:

**(1)** The minimum limit of insurance you agreed to provide; or

**(2)** The limit of insurance under this policy

whichever is less.

**f.** Any person or organization for whom you have agreed in writing prior to any "occurrence" or "offense" to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

**(1)** The minimum limit of insurance you agreed to provide; or

**(2)** The limit of insurance under this policy whichever is less.

**3.** With respect to:

**a.** Any "auto"; or

**b.** "Mobile equipment" registered in your name under any motor vehicle registration law;

any person is an insured while driving such "auto" or "mobile equipment" with your permission. Any other person or organization responsible for the conduct of such person is

also an insured, but only with respect to liability arising out of the operation of the "auto" or registered "mobile equipment".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow an "auto" is an insured only if that "auto" is a trailer connected to an "auto" you own.

But no person or organization is an insured under this paragraph 3 for:

a.  "Bodily injury" to a co-"employee" of the person driving the "auto" or "mobile equipment";

b.  "Property damage" to property owned by the employer of any person who is an insured under this provision;

c.  Any "auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "auto", unless:

    (1)  Insurance is afforded to that owner for such "auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

    (2)  Such "auto" is a trailer connected to an "auto" you own;

d.  Any "auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

e.  The movement of property to or from an "auto" except your "employees" or partners, the lessees or borrowers of such "auto", and any "employees" of such lessees or borrowers.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

b.  Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition 9 - Maintenance of Underlying Insurance;

c.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

d.  Coverage B does not apply to "personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

### SECTION IV – LIMIT OF INSURANCE

1.  The Policy Aggregate Limit shown in the Declarations and the rules below fix the most we will indemnify regardless of the number of:

a.  Insureds;

b.  "Claims" made or "suits" brought; or

c.  Persons or organizations making "claims" or bringing "suits".

2.  The Policy Aggregate Limit is the most we will indemnify for:

a.  All "ultimate net loss" under Coverage A and Coverage B combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard".

b.  Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".

3.  If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.

4.  The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period

of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## SECTION V – CONDITIONS

### 1. Appeals

In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.

### 2. Bankruptcy

Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in the Declarations of this policy.

### 3. Cancellation

a.  The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.

b.  We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

(2) Thirty (30) days before the effective date of cancellation if we cancel for any reason.

c.  We will mail or deliver our notice to the first named insured's last mailing address known to us.

d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e.  If this policy is cancelled, we will send the first named insured any premium refund due. If we cancel, the refund will be pro rata. If the first named insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

### 4. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us.

### 5. Duties in the Event of "Occurrence", "Offense", "Claim" or "Suit"

a.  You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an "offense" which may result in a "claim". To the extent possible, notice should include:

(1) How, when, and where the "occurrence" or alleged "offense" took place;

(2) The insured's name and address;

(3) The names and addresses of any injured persons or witnesses; and

(4) The nature and location of any injury or damage arising out of the "occurrence" or "offense".

Notice of an "occurrence" or an "offense" is not notice of a "claim".

b.  If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable

You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other insured involved in such "claim" or "suit" must;

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

e. No insureds shall in any way jeopardize our rights after an "occurrence" or "offense".

6. **Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7. **Inspection and Surveys**

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes to such conditions.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not indemnifiable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance**

a. You must keep the "underlying insurance" described in the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any cancellation of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".

b. You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".

c. Your failure to comply with the foregoing paragraphs a. and b. will not invalidate this policy, but in the event of such failure, we

shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

### 10. Other Insurance

If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

**a.** As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, we will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

   **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   **(2)** The total of all deductible and self-insured amounts under this or any other insurance.

**b.** We will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers.

### 11. Premium Audit

**a.** We will compute all premiums for this policy in accordance with our rules and rates.

**b.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

**c.** The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 12. Premiums

The first named insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

### 13. Representations

By accepting this policy, you agree that:

**a.** The information shown on the Declarations is accurate and complete;

**b.** The information is based upon representations you made to us in your application(s) for this policy;

**c.** We have issued this policy in reliance upon your representations; and

**d.** Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if you intentionally conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

### 14. Separation of Insureds

Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

**a.** As if each named insured were the only named insured; and

**b.** Separately to each insured against whom "claim" is made or "suit" is brought.

### 15. Sole Agent

The named insured first shown in the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

### 16. Transfer of Rights of Recovery Against Others to Us

If the insured has rights to recover all or part of any indemnification we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any indemnity hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries. If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

### 17. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### 18. When Loss Payable

Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for indemnity under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

### 19. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI -- DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following "offenses":

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. However, "auto" does not include "mobile equipment".

3. "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "auto". Use includes operation and "loading and unloading".

4. "Bodily injury" means bodily injury, sickness, or disease sustained by a natural person. This includes death, shock, fright, mental anguish, mental injury, or disability which results from any of these at any time.

5. "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or "offense".

6. "Coverage territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to.

7. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.



9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. "You" have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

       Paragraph f. does not include that part of any contact or agreement:

       (1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and

affecting any railroad bridge or trestle, tracks, roadbeds, tunnels, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities;

(4) That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

(5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

14. "Occurrence" means

a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

b. With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

15. "Offense" means any of the "offenses" included in the definitions of "advertising injury" or "personal injury".

16. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following "offenses":

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies if done by or on behalf of its owner, landlord or lessor

d. Oral or written publication of material that violates a person's right of privacy.

17. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

18. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

  (a) When all of the work called for in your contract has been completed.

  (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

  (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by "loading or unloading" of that vehicle by any insured;

  (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

19. "Property damage" means.

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

20. "Retained limit" means the greater of:

a. The sum of amounts applicable to any "claim" or "suit" from:

  (1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and

  (2) Other collectible primary insurance; or

b. The "self-insured retention".

21. "Self-insured retention" means the amount in the Declarations.

22. "Suit" means a civil proceeding in which damages because of "advertising injury", "bodily injury", "personal injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

23. "Temporary worker" means a person who is furnished to you to substitute for a "permanent employee" on leave or to meet seasonal or short-term workload conditions.

24. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury". "Ultimate net loss" must be fully determined as shown in Condition 18. - When Loss Payable. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".

25. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the Declarations and any renewals or replacements of those policies.

26. "Underlying insurer" means any company issuing any policy of "underlying insurance".

27. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**28.** "Your work" means.

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

12100 0197

## Asbestos Exclusion

**This endorsement changes the policy. Please read it carefully.**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

2. The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12107 0197

## Automobile Liability Following Form

### This endorsement changes the Policy. Please read it carefully.

Except to the extent coverage is provided in "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any "auto":

1.  While away from premises you own, rent, or occupy; or

2.  Owned by or rented or loaned to any insured.

"Use" includes operation and "loading or unloading'".

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12112 0197

## Care, Custody, or Control Exclusion

### This endorsement changes the policy. Please read it carefully.

This insurance does not apply to "property damage" to:

1.  Property rented or occupied by any insured;

2.  Property loaned to any insured; or

3.  Personal property in the care, custody or control of any insured.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12115 0197

## General Liability Following Form Endorsement

### *This endorsement changes the policy. Please read it carefully.*

It is agreed that where "underlying insurance" is written with terms or conditions providing greater protection or indemnity or more limited protection or indemnity to the insured than the terms or conditions of this policy, this insurance shall indemnify the insured upon the same terms, conditions and limitations of the applicable "underlying insurance".

*In all other respects the terms, limits and conditions of this policy remain unchanged.*

12133 8197

## Professional Liability Exclusion

### This endorsement changes the policy. Please read it carefully.

This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or the failure to render any professional services to or for others.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12153 0197

## Uninsured/Underinsured Motorists Exclusion

**This endorsement changes the policy. Please read it carefully.**

This policy does not apply to any obligation imposed by any Automobile No Fault Law or Uninsured Motorists or Underinsured Motorists Law unless this policy is endorsed to provide such coverage.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12167 0197

## Illinois Changes - Cancellation & Nonrenewal

### This endorsement changes the policy. Please read it carefully.

This endorsement modifies insurance under the following:

COMMERCIAL UMBRELLA

**A. CANCELLATION (Section V - Conditions) Is Replaced by the following:**

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B. The following is added and supersedes any Provision to the contrary:**

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we not comply with these terms, this policy will terminate:

   **a.** On the expiration date if:

      **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      **(2)** We have indicated our willingness to renew this policy to you or your representative; or

      **(3)** You have notified us or our agent that you do not want to renew this policy.

   **b.** On the effective date of any other insurance replacing this policy.

Page 2 of 2

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

## Nebraska Changes - Cancellation & Nonrenewal

### This endorsement changes the policy. Please read it carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA

**A.** Paragraphs 2. and 3. of the CANCELLATION (Section V - Conditions) are replaced by the following:

**2. a.** If this policy has been in effect for 60 days or less we may cancel this policy for any reason.

**b.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained through material misrepresentation;

**(3)** Any insured has submitted a fraudulent claim;

**(4)** Any insured has violated the terms and conditions of this policy;

**(5)** The risk originally accepted has substantially increased;

**(6)** Certification to the Director of Insurance of our loss of reinsurance which provided coverage to us for all or a substantial part of the underlying risk insured; or

**(7)** The determination by the Director of Insurance that the continuation of the policy could place us in violation of the Nebraska insurance laws.

**C.** If we cancel this policy subject to 2.a. or 2.b. above, we will mail to the first Named Insured a written notice of cancellation, stating the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 60 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail our notice by first class mail to the first Named Insured's last mailing address known to us. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

**B.** Paragraph 6. of the CANCELLATION Condition does not apply.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured, at least 60 days prior to the expiration date of this policy.

**2.** Any notice of nonrenewal will be mailed by first class mail to the first Named Insured's last mailing address known to us. A United States Postal Service Certificate of Mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate of mailing.

**In all other respects the terms, limits and conditions of this policy remain unchanged.**

12179 0197

## Employers' Liability Limitation

### This endorsement changes the policy. Please read it carefully.

This insurance does not apply to "bodily injury" (other than liability assumed by the insured under an "insured contract") to:

1. An "employee" of the insured arising out of and in the course of:

    a.  Employment by the insured; or

    b.  Performing duties related to the conduct of the insured's business;

2. A co-"employee" of the insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

3. The spouse, child, parent, brother or sister of that "employee" as a consequence of 1. or 2. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to "bodily injury" for which coverage is provided for you in "underlying insurance" under either:

1. A Workers Compensation and Employers Liability Insurance Policy promulgated by the National Council on Compensation Insurance (copyright 1982, and subsequent); or

2. A Commercial General Liability Insurance Policy which:

    a.  Insures your direct liability for "bodily injury" to your "employees" arising out of and in the course of their employment by you; and

    b.  Only applies to such injury in a. above when such employment is subject to the Workers Compensation law(s) of Nevada, Washington, West Virginia, North Dakota or Ohio

As used in this policy, the term "underlying insurer" includes any Group Self-Insurance Organization that issues a Workers Compensation and Employers Liability Policy that provides "underlying insurance".

### In all other respects the terms, limits and conditions of this policy remain unchanged.

# Exhibit C

## **CERTIFICATION**

State of Texas          )
                        ) ss.
Dallas County           )

Policy Number:  CPP 3081153 00                 Company:  Milwaukee Mutual Insurance
Named Insured:  Architectural Sealants, Inc.   As of Date or Period: 10/17/00 to 10/17/01
    Boardwalk Construction Management, Inc.

_____Debbie Dodson_____, being first duly sworn on oath,
deposes and says that:

1.    I am Operations Supervisor of Unitrin Business Insurance, and a fully authorized
    representative of the above named, affiliated Company.   As such, I have full access to the
    insurance records and files for the identified policy of insurance issued by the Company.

⊠  2.    I have reviewed and compared the attached pages to such records and files and
    hereby certify that with the exception of any forms or endorsements identified in
    paragraph 3, the same are a true and correct copy of the above identified policy of
    insurance as reflected in the Company's records and files as of the above date.

*(select either)*
                              or

☐  2.    I have reviewed and compared the attached pages to such records and files and
    hereby certify that with the exception of any forms or endorsements identified in
    paragraph 3, the same are a true and correct copy of the above identified policy of
    insurance as reflected in the Company's records and files. The above policy was
    cancelled on      *.(insert effective date of cancellation)*

⊠  3.    The attached copy does not vary from the above identified policy.

*(select either)*
                              or

☐  3.    The attached copy varies from the above identified policy, as follows:

| The original form or endorsement no. | Varies from the attached form or endorsement no. | Because (*state reason for variance*) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Dated this 3rd day of October, 2007.

Signed and sworn to before me on the above
date by _Debbie Dodson_____

_Danielle M Kazmierczak_____
Notary Public, State of Texas
My Commission _01/24/11_____

                                  **Debbie Dodson**

DANIELLE M KAZMIERCZAK
Notary Public, State of Texas
My Commission Expires
January 24, 2011

10/3/2007

**Commercial General Liability Declarations**

### MILWAUKEE INSURANCE

120MEG                                    Company Copy

## THIS IS AN OCCURRENCE POLICY

**Coverage provided by:**

MILWAUKEE MUTUAL INSURANCE COMPANY

**Declarations:**

NEW BUSINESS

**Named Insured and Mailing Address:**

ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL 60449

**Policy Number:**

CPP30811530082

**Replaces Previous Policy Number:**

**Legal Status:**

CORPORATION

**Business Description:**

COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

**Agency Number and Name:**

11 3096     THILMAN & FILIPPINI, LLC (C)

**Policy Period:**

From: 10/17/2000     to: Until Cancelled     at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Description of Premises:**  SEE ATTACHED SCHEDULE GLSCD

**Coverages Provided:**  SEE ATTACHED SCHEDULE GLSCD

**Limits of Insurance:** *Coverage is provided where a limit of liability is shown for the coverage.*

| | |
|---|---|
| Each Occurrence Limit: | $ 1,000,000 |
| General Aggregate Limit (other than Products-Completed Operations): | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit: | $ 2,000,000 |
| Medical Expense Limit: | $ 5,000 |
| Personal & Advertising Injury Limit: | $ 1,000,000 |
| Fire Damage Limit: | $ 100,000 |

**Total Premium:     AS BILLED**

### * AMENDMENT INFORMATION *

Effective:                         Premium Adjustment:

GLDEC 03/94

Page 1 of 2

*Endorsements Applicable:*

| | | | |
|---|---|---|---|
| GLSCD 0394 | 33-0481 0399 | 12278 1092 | CG0300 0196 |
| CG0001 0798 | CG0200 0487 | CG2147 0798 | IL0003 0498 |
| IL0017 1198 | IL0021 1185 | 2279A 0982 | |

---

*Location of all premises you own, rent or occupy:*   SEE ATTACHED SCHEDULE GLSCD

---

*Date of Issue:* 11/08/2000

*Countersigned by Authorized Representative*

# General Liability Schedule

Company Copy

**Policy Number:** CPP30811530082

## Location of Premises

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

#

#

| Prem. & Bldg. | Classification | Code Number | Premises Operations | Products Completed Operations | Owners Contractors Protective | Railroad Protective |
|---|---|---|---|---|---|---|
| 001 001 | PAINT-EXTERIOR-EXC 3 STORY-NOC | 98303 | X | X | | |
| 001 001 | CONTR-EXECUTIVE SUPERVISOR PROD/COMP OP SUBJ TO GEN AGG LIMIT | 91580 | X | X | | |
| 001 001 | PAINT-EXTERIOR-3/LESS STY-NOC | 98304 | X | X | | |
| 001 001 | PAINT-INTERIOR-BLDG/STRUCTURE | 98305 | X | X | | |

| Prem. & Bldg. | Premium Basis | | |
|---|---|---|---|
| | Exposure | Premium Base | Exposure Base |
| 001 001 | $ 45,000 | PAYROLL | PER 1000 |
| 001 001 | $ 65,000 | PAYROLL | PER 1000 |
| 001 001 | $ 290,000 | PAYROLL | PER 1000 |
| 001 001 | $ 115,000 | PAYROLL | PER 1000 |

GLSCD 03/94

# CONTRACTORS COVERAGE EXPANSION ENDORSEMENT

### This Endorsement Changes The Policy.  Please Read it Carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## (1)  AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

## (2) AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your "locations" owned by or rented to you.

"Locations" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way railroad.

## (3) MEDICAL PAYMENTS

Subject to all the times of SECTION III – LIMITS OF INSURANCE, the Medical Expense Limit is the higher of:

a.  $10,000; or

b.  The amount shown in the Declarations for Medical Expense Limit.

This provision does not apply if COVERAGE C. MEDICAL PAYMENTS is excluded either by the provisions of the Coverage Part or by endorsement.

## (4) ADDITIONAL INSURED BY CONTRACT OR AGREEMENT

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Each of the following is also an insured:

    a.   Any person or organization you are required by a written contract, agreement, or permit to name as an insured, but only with respect to liability arising out of:

        1.   "your work" performed for that insured at the location designated in the contract, agreement, or permit; or

        2.   premises owned or used by you.

    b.   This insurance does not apply unless the contract, agreement, or permit is made prior to the "bodily injury" or "property damage".

## (5) WAIVER OF SUBROGATION

Under SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, the following is added to Condition 8. Transfer of Rights of Recovery Against Others to Us:

If you have waived those rights before a loss, our rights are waived also.

## (6) NAMED INSURED

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Any organization over which you maintain ownership of more than 50% will be a Named Insured if there is no other similar insurance available to that organization.  However,

    a.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    b.   Coverages B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

**(7) NEWLY FORMED OR ACQUIRED ORGANIZATION**

In paragraph **4.a.** SECTION II – WHO IS AN INSURED, "90th day is changed to 180th day".

This provision does not apply if newly formed or acquired organizations' coverage is excluded either by provision of the Coverage Part or by endorsement.

**(8) LIMITED PROFESSIONAL LIABILITY**

The following is added to paragraph **2.**, Exclusions of COVERAGES A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph **2.**, Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**2.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

**(9) NON-OWNED WATERCRAFT**

Exclusion **g.** of COVERAGE A (Section I) does not apply to any watercraft under 51 feet long that is neither:

    **a.** Owned by you; nor

    **b.** Being used to carry persons or property for a charge

This provision applies to any person, who with your consent, either uses or its responsible for the use of a watercraft.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess, or contingent.

**(10) CONTRACTUAL LIABILITY FOR PERSONAL INJURY AND ADVERTISING INJURY**

Exclusion **a.(4)** of Coverage B (SECTION I) is deleted.

**(11) BROAD NOTICE OF OCCURRENCE**

Paragraph **2.a.** of the Duties In The Event of Occurrence, Offense, Claim or Suit Condition (SECTION IV) is deleted and replaced by the following:

You must see to it we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless your partners, "executive officers", directors or insurance manager shall have actually received notice.  To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and,

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.


**(12) UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not deny coverage under this Coverage Part because of such failure.

**(13) NOTICE OF OCCURRENCE**

The following is added to the Duties In The Event of Occurrence, Offense, Claim or Suit CONDITION, (SECTION IV):

e. If you report an "occurrence" to your workers' compensation insurer which develops into a liability claim for which coverage is provided by this Coverage Part, failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of paragraphs a., b., and c. above. However, you shall give written notice of this "occurrence" to us as soon as you are made aware of the fact that this "occurrence" is a liability claim rather than a workers' compensation claim.

33-0481 (0399)

## *Additional Insured - Primary Coverage*

### *This endorsement changes the policy. Please read it carefully.*

**Name of Person or Organization:**

BLANKET PRIMARY NON-CONTRIBUTORY ADDL
INSUREDS APPLY WHEN REQUIRED BY CONTRACT
& ON FILE WITH MILWAUKEE INSURANCE

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the schedule, but only with respect to liability arising out of your work for that insured by or for you.

Furthermore, the following is added to **SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS** paragraph 4, Other Insurance:

4.  Other Insurance
    This insurance is primary for the person or organization, shown in the schedule, but only with respect to liability arising out of your work for that insured by or for you. Other insurance afforded to that insured will apply as excess and not contribute as primary to the insurance afforded by this endorsement.

*In all other respects the terms, limits and conditions of this policy remain unchanged.*

**12278 1097**

## *Deductible Liability Insurance*

Page 1 of 2

Company Copy

### *This endorsement changes the policy. Please read it carefully.*

Policy Number: CPP30811530082

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## \* S C H E D U L E \*

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | Per Claim | or | Per Occurrence |
| **Bodily Injury Liability** | | | |
| **OR** | | | |
| **Property Damage Liability** | | | $ 500 |
| **OR** | | | |
| **Bodily Injury Liability and/or Property Damage Liability Combined** | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

    **(1)** "Bodily injury";

    **(2)** "Property damage"; or

    **(3)** "Bodily injury" and "property damage" combined

    as the result of any one "occurrence."

    If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

CG0300 0196

Copyright, Insurance Services Office, Inc., 1994

With respect to "property damage", person includes an organization.

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence."

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG0300 0196

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

#### 2. Exclusions

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.


## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

   **(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   **(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   **(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   **(4)** Arising out of a criminal act committed by or at the direction of any insured;

   **(5)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   **(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   **(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   **(8)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   **(9)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

   **(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

   **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

   **(1)** On premises you own or rent;

   **(2)** On ways next to premises you own or rent; or

   **(3)** Because of your operations;

   provided that:

   **(1)** The accident takes place in the "coverage territory" and during the policy period;

   **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

   **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   **(1)** First aid administered at the time of an accident;

   **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage **A.**

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

**(2)** Provides us with written authorization to:

    **(a)** Obtain records and other information related to the "suit"; and

    **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    **(1)** "Bodily injury" or "personal and advertising injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by,

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

Copyright, Insurance Services Office, Inc., 1997

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C;

**b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage A; and

**b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98     □

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    ☐

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

**c.** All parts of the world if:

  **(1)** The injury or damage arises out of:

    **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

    **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

  **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98 □

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** CANCELLATION (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

   **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

   **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supercedes any provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   **a.** On the expiration date, if:

   **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

   **(2)** We have indicated our willingness to renew this policy to you or your representative; or

   **(3)** You have notified us or our agent that you do not want to renew this policy.

   **b.** On the effective date of any other insurance replacing this policy.

**C.** Mailing of Notices

We will mail all cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1987, 1992                 □



COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

 **(a)** Refusal to employ that person;

 **(b)** Termination of that person's employment; or

 **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

INTERLINE
IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility;" but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85      Copyright, Insurance Services Office, Inc., 1983, 1984      **Page 1 of 2**    ☐

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, Insurance Services Office, Inc., 1983, 1984 □

## General Form Endorsement

This endorsement forms a part of Policy No. CPP30811530082
and is effective 10/17/2000

Policy Period    From: 10/17/2000    To: 10/17/2001

**Issued to:**

ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.

IT IS HEREBY UNDERSTOOD AND AGREED THAT THERE IS A
$500 PD DEDUCTIBLE APPLYING TO FORM 12278.

In all other respects the terms, limits and conditions of this policy remain unchanged.

2279 09/82

# Exhibit D

## **CERTIFICATION**

State of Texas )
) ss.
Dallas County )

Policy Number: CPP 3081153 01                Company: Milwaukee Mutual Insurance
Named Insured: Architectural Sealants, Inc.    As of Date or Period: 10/17/01 to 10/17/02
Boardwalk Construction Management, Inc.

_____Debbie Dodson_____, being first duly sworn on oath,
deposes and says that:

1. I am Operations Supervisor of Unitrin Business Insurance, and a fully authorized
   representative of the above named, affiliated Company.  As such, I have full access to the
   insurance records and files for the identified policy of insurance issued by the Company.

☒ 2.    I have reviewed and compared the attached pages to such records and files and
        hereby certify that with the exception of any forms or endorsements identified in
        paragraph 3, the same are a true and correct copy of the above identified policy of
        insurance as reflected in the Company's records and files as of the above date.

                                                        or

☐ 2.    I have reviewed and compared the attached pages to such records and files and
        hereby certify that with the exception of any forms or endorsements identified in
        paragraph 3, the same are a true and correct copy of the above identified policy of
        insurance as reflected in the Company's records and files. The above policy was
        cancelled on        *.(insert effective date of cancellation)*

☒ 3.    The attached copy does not vary from the above identified policy.

                                                        or

☐ 3.    The attached copy varies from the above identified policy, as follows:

| The original form or endorsement no. | Varies from the attached form or endorsement no. | Because (*state reason for variance*) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Dated this 2nd day of October, 2007.

Signed and sworn to before me on the above
date by _____

_____
Notary Public, State of Texas
My Commission 01·24·11

                                        _____
                                        Debbie Dodson

10/2/20

DANIELLE M KAZMIERCZAK
Notary Public, State of Texas
My Commission Expires
January 24, 2011

**Commercial General Liability Declarations**

 **MILWAUKEE INSURANCE**

Company Copy

## THIS IS AN OCCURRENCE POLICY

**Coverage provided by:**
MILWAUKEE MUTUAL INSURANCE COMPANY

**Declarations:**
ENDORSEMENT

**Named Insured and Mailing Address:**
ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL  60449

**Policy Number:**
CPP30811530182

**Previous Policy Number:**
CPP30811530082

**Legal Status:**
CORPORATION

**Business Description:**
COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

**Agency Number and Name:**
11   03096     THILMAN & FILIPPINI, LLC (C)

**Policy Period:**
From: 10/17/2001  to: Until Cancelled     at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Description of Premises:**     SEE ATTACHED SCHEDULE GLSCD

**Coverages Provided:**     SEE ATTACHED SCHEDULE GLSCD

**Limits of Insurance:** Coverage is provided where a limit of liability is shown for the coverage.

| | |
|---|---:|
| Each Occurrence Limit: | $ 1,000,000 |
| General Aggregate Limit (other than Products-Completed Operations): | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit: | $ 2,000,000 |
| Medical Expense Limit: | $ 5,000 |
| Personal & Advertising Injury Limit: | $ 1,000,000 |
| Fire Damage Limit: | $ 100,000 |

**Total Premium:** AS BILLED

### * AMENDMENT INFORMATION *

Effective: 10/17/2001          Premium Adjustment: ADDITIONAL          $ 4,764.00

PAYROLL FOR CLASS CODES 98303, 91580, 98304 AND 98305
ARE INCREASED PER AUDIT FIGURES.

**GLDEC 03/94**

Page 1 of 2

**GLDEC 03/94**                                                                                      Page 2 of 2

### Endorsements Applicable:

| | | | |
|---|---|---|---|
| GLSCD 0394 | 33-0481 0399 | 12278 1097 | CG0300 0196 |
| 2279A 0982 | CG0001 0798 | CG0200 0487 | CG2147 0798 |
| IL0003 0498 | IL0017 1198 | IL0021 1185 | |

**Location of all premises you own, rent or occupy:**    SEE ATTACHED SCHEDULE GLSCD

**Date of Issue:** 05/22/2002

**Countersigned by Authorized Representative**

## General Liability Schedule

Company Copy

**Location of Premises**

No. 001
6525 W. STEGER
MONEE, IL 60449

No. 001
6525 W. STEGER
MONEE, IL 60449

No. 001
6525 W. STEGER
MONEE, IL 60449

**Policy Number:**  CPP30811530182

No. 001
6525 W. STEGER
MONEE, IL 60449

| Prem. & Bldg. | | Classification | Code Number | Premises Operations | Products Completed Operations | Owners Contractors Protective | Railroad Protective |
|---|---|---|---|---|---|---|---|
| 001 | 001 | PAINT-EXTERIOR-EXC 3 STORY-NOC | 98303 | X | X | | |
| 001 | 001 | CONTR-EXECUTIVE SUPERVISOR PROD/COMP OP SUBJ TO GEN AGG LIMIT | 91580 | X | X | | |
| 001 | 001 | PAINT-EXTERIOR-3/LESS STY-NOC | 98304 | X | X | | |
| 001 | 001 | PAINT-INTERIOR-BLDG/STRUCTURE | 98305 | X | X | | |

| Prem. & Bldg. | | Premium Basis | | |
|---|---|---|---|---|
| | | Exposure | Premium Base | Exposure Base |
| 001 | 001 | $ 56,168 | PAYROLL | PER 1000 |
| 001 | 001 | $ 123,988 | PAYROLL | PER 1000 |
| 001 | 001 | $ 359,472 | PAYROLL | PER 1000 |
| 001 | 001 | $ 146,035 | PAYROLL | PER 1000 |

GLSCD 03/94

## Commercial General Liability Declarations

 **MILWAUKEE INSURANCE**

120ME5                                Company Copy

## THIS IS AN OCCURRENCE POLICY

**Coverage provided by:**
MILWAUKEE MUTUAL INSURANCE COMPANY

**Policy Number:**
CPP30811530182

**Declarations:**
RENEWAL

**Replaces Previous Policy Number:**
CPP30811530082

**Named Insured and Mailing Address:**
ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.
6525 W. STEGER
MONEE, IL 60449

**Legal Status:**
CORPORATION

**Business Description:**
COMMERCIAL CAULKING
FOR WINDOWS AND FLOORS

**Agency Number and Name:**
11 3096    THILMAN & FILIPPINI, LLC (C)

**Policy Period:**

From: 10/17/2001    to: Until Cancelled    at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Description of Premises:**    SEE ATTACHED SCHEDULE GLSCD

**Coverages Provided:**    SEE ATTACHED SCHEDULE GLSCD

**Limits of Insurance:** *Coverage is provided where a limit of liability is shown for the coverage.*

| | |
|---|---:|
| Each Occurrence Limit: | $ 1,000,000 |
| General Aggregate Limit (other than Products-Completed Operations): | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit: | $ 2,000,000 |
| Medical Expense Limit: | $ 5,000 |
| Personal & Advertising Injury Limit: | $ 1,000,000 |
| Fire Damage Limit: | $ 100,000 |

**Total Premium:    AS BILLED**

## * AMENDMENT INFORMATION *

Effective:                    Premium Adjustment:

GLDEC 03/94

Page 1 of 2

*Endorsements Applicable:*

| | | | |
|---|---|---|---|
| GLSCD 0394 | 33-0481 0399 | 12278 1097 | CG0300 0196 |
| 2279A 0982 | CG0001 0798 | CG0200 0487 | CG2147 0798 |
| IL0003 0498 | IL0017 1198 | IL0021 1185 | |

*Location of all premises you own, rent or occupy:*  SEE ATTACHED SCHEDULE GLSCD

*Date of Issue:* 10/16/2001

*Countersigned by Authorized Representative*

# General Liability Schedule

Company Copy

**Policy Number:** CPP30811530182

## Location of Premises

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

# 001
6525 W. STEGER
MONEE, IL 60449

\#

\#

| Prem. & Bldg. | Classification | Code Number | Premises Operations | Products Completed Operations | Owners Contractors Protective | Railroad Protective |
|---|---|---|---|---|---|---|
| 001 001 | PAINT-EXTERIOR-EXC 3 STORY-NOC | 98303 | X | X | | |
| 001 001 | CONTR-EXECUTIVE SUPERVISOR PROD/COMP OP SUBJ TO GEN AGG LIMIT | 91580 | X | X | | |
| 001 001 | PAINT-EXTERIOR-3/LESS STY-NOC | 98304 | X | X | | |
| 001 001 | PAINT-INTERIOR-BLDG/STRUCTURE | 98305 | X | X | | |

| Prem. & Bldg. | Premium Basis | | |
|---|---|---|---|
| | Exposure | Premium Base | Exposure Base |
| 001 001 | $ 45,000 | PAYROLL | PER 1000 |
| 001 001 | $ 65,000 | PAYROLL | PER 1000 |
| 001 001 | $ 290,000 | PAYROLL | PER 1000 |
| 001 001 | $ 115,000 | PAYROLL | PER 1000 |

# CONTRACTORS COVERAGE EXPANSION ENDORSEMENT

### This Endorsement Changes The Policy. Please Read It Carefully.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### (1) AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

### (2) AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

The General Aggregate limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your "locations" owned by or rented to you.

"Locations" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way railroad.

### (3) MEDICAL PAYMENTS

Subject to all the times of SECTION III – LIMITS OF INSURANCE, the Medical Expense Limit is the higher of:

a. $10,000; or

b. The amount shown in the Declarations for Medical Expense Limit.

This provision does not apply if COVERAGE C. MEDICAL PAYMENTS is excluded either by the provisions of the Coverage Part or by endorsement.

### (4) ADDITIONAL INSURED BY CONTRACT OR AGREEMENT

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Each of the following is also an insured:

    **a.** Any person or organization you are required by a written contract, agreement, or permit to name as an insured, but only with respect to liability arising out of:

        **1.** "your work" performed for that insured at the location designated in the contract, agreement, or permit; or

        **2.** premises owned or used by you.

    **b.** This insurance does not apply unless the contract, agreement, or permit is made prior to the "bodily injury" or "property damage".

### (5) WAIVER OF SUBROGATION

Under SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, the following is added to Condition B. Transfer of Rights of Recovery Against Others to Us:

If you have waived those rights before a loss, our rights are waived also.

### (6) NAMED INSURED

Under SECTION II – WHO IS AN INSURED, is amended as follows:

Any organization over which you maintain ownership of more than 50% will be a Named Insured if there is no other similar insurance available to that organization. However,

    **a.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **b.** Coverages B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

33-0481 (0399)

**(7) NEWLY FORMED OR ACQUIRED ORGANIZATION**

In paragraph **4.a.** SECTION II – WHO IS AN INSURED, "90th day is changed to 180th day".

This provision does not apply if newly formed or acquired organizations' coverage is excluded either by provision of the Coverage Part or by endorsement.

**(8) LIMITED PROFESSIONAL LIABILITY**

The following is added to paragraph **2.,** Exclusions of COVERAGES A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph **2.,** Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**2.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

**(9) NON-OWNED WATERCRAFT**

Exclusion **g.** of COVERAGE A (Section I) does not apply to any watercraft under 51 feet long that is neither:

    **a.** Owned by you; nor

    **b.** Being used to carry persons or property for a charge

This provision applies to any person, who with your consent, either uses or its responsible for the use of a watercraft.

This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess, or contingent.

**(10) CONTRACTUAL LIABILITY FOR PERSONAL INJURY AND ADVERTISING INJURY**

Exclusion **a.(4)** of Coverage B (SECTION I) is deleted.

**(11) BROAD NOTICE OF OCCURRENCE**

Paragraph **2.a.** of the Duties In The Event of Occurrence, Offense, Claim or Suit Condition (SECTION IV) is deleted and replaced by the following:

You must see to it we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless your partners, "executive officers", directors or insurance manager shall have actually received notice. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and,

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**(12) UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not deny coverage under this Coverage Part because of such failure.

**(13) NOTICE OF OCCURRENCE**

The following is added to the Duties In The Event of Occurrence, Offense, Claim or Suit CONDITION, (SECTION IV):

e. If you report an "occurrence" to your workers' compensation insurer which develops into a liability claim for which coverage is provided by this Coverage Part, failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed in violation of paragraphs a., b., and c. above.  However, you shall give written notice of this "occurrence" to us as soon as you are made aware of the fact that this "occurrence" is a liability claim rather than a workers' compensation claim.

33-0481 (0399)

## Additional Insured - Primary Coverage

### This endorsement changes the policy. Please read it carefully.

**Name of Person or Organization:**

BLANKET PRIMARY NON-CONTRIBUTORY ADDL
INSUREDS APPLY WHEN REQUIRED BY CONTRACT
& ON FILE WITH MILWAUKEE INSURANCE

WHO IS AN INSURED (Section II) is amended to
include as an insured the person or organization
shown in the schedule, but only with respect to
liability arising out of your work for that insured by or
for you.

Furthermore, the following is added to **SECTION IV
COMMERCIAL GENERAL LIABILITY
CONDITIONS** paragraph 4, Other Insurance:

4. Other Insurance
   This insurance is primary for the person or
   organization, shown in the schedule, but only with
   respect to liability arising out of your work for that
   insured by or for you. Other insurance afforded to
   that insured will apply as excess and not
   contribute as primary to the insurance afforded by
   this endorsement.

*In all other respects the terms, limits and
conditions of this policy remain unchanged.*

12278 1097

*Deductible Liability Insurance*

### *This endorsement changes the policy. Please read it carefully.*

Policy Number: CPP30811530182

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## *S C H E D U L E*

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
| | Per Claim | or | Per Occurrence |
| **Bodily Injury Liability** | | | |
| **OR** | | | |
| **Property Damage Liability** | | | $ 500 |
| **OR** | | | |
| **Bodily Injury Liability and/or Property Damage Liability Combined** | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**  (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

    c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

        (1) "Bodily injury";

        (2) "Property damage"; or

        (3) "Bodily injury" and "property damage" combined

        as the result of any one "occurrence."

        If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

CG0300 0196

Copyright, Insurance Services Office, Inc., 1994

With respect to "property damage", person includes an organization.

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

  c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

    (1) "Bodily injury";

    (2) "Property damage"; or

    (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence."

C. The terms of this insurance, including those with respect to:

  1. Our right and duty to defend the insured against any "suits" seeking those damages; and

  2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

## *General Form Endorsement*

This endorsement forms a part of Policy No. CPP30811530182
and is effective 10/17/2001

Policy Period    From: 10/17/2001    To: 10/17/2002

**Issued to:**

ARCHITECTURAL SEALANTS, INC.
BOARDWALK CONSTRUCTION MANAGEMENT, INC.


IT IS HEREBY UNDERSTOOD AND AGREED THAT THERE IS A
$500 PD DEDUCTIBLE APPLYING TO FORM 12278.


**In all other respects the terms, limits and conditions of this policy remain unchanged.**

2279 09/82

COMMERCIAL GENERAL LIABILITY
CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997


(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

 Copyright, Insurance Services Office, Inc., 1997

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997 CG 00 01 07 98 □

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98     □

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

    a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

    (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c. Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98    □

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Copyright, Insurance Services Office, Inc., 1997

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98    □

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(1)** You;

    **(2)** Others trading under your name; or

    **(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**21.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** CANCELLATION (Common Policy Conditions) is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least;

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supercedes any provision to the contrary:

NONRENEWAL

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   **a.** You; and

   **b.** The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   **a.** On the expiration date, if:

      **(1)** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      **(2)** We have indicated our willingness to renew this policy to you or your representative; or

      **(3)** You have notified us or our agent that you do not want to renew this policy.

   **b.** On the effective date of any other insurance replacing this policy.

**C.** Mailing of Notices

   We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

    Copyright, Insurance Services Office, Inc., 1987, 1992    **Page 1 of 1**    ☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, Insurance Services Office, Inc., 1997 □

INTERLINE
IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

  BOILER AND MACHINERY COVERAGE PART
  BUSINESSOWNERS POLICY
  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL CRIME COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  COMMERCIAL INLAND MARINE COVERAGE PART
  COMMERCIAL PROPERTY COVERAGE PART
  EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
  FARM COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  PROFESSIONAL LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART
  SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   **(1)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

       Copyright, Insurance Services Office, Inc., 1983, 1984         ☐

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

  **(a)** Any "nuclear reactor;"

  **(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1983, 1984