

MAR 0 7 2008
**FILED**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION



MAR 0 7 2008   N₣

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| MILWAUKEE MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No:. 08 C 00029 |
| ) | |
| ARCHITECTURAL SEALANTS, INC., ) | Hon. Judge Wayne R. Andersen |
| F.H. PASCHEN, S.N. NIELSEN, INC, ) | |
| BOARD OF TRUSTEES OF WILLIAM ) | Magistrate Judge Keys |
| RAINEY HARPER COLLEGE NO. ) | |
| 512 and ILLINOIS CAPITAL ) | |
| DEVELOPMENT BOARD, ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF FILING

**TO:**   SEE ATTACHED CERTIFICATE OF SERVICE

**PLEASE TAKE NOTICE** that on March 7, 2008, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **F.H. Paschen, S.N. Nielson, Inc.'s Answer, Affirmative Defense and Counterclaim,** a copy of which is attached hereto and served upon you herewith.

Respectfully submitted,

**BURKE BURNS & PINELLI, LTD.**

By:   /s/ Christopher J. Hales
        One of the Attorneys for F.H. Paschen,
        S.N. Nielson, Inc.

Ellen B. Epstein #6187521
Christopher J. Hales #6280150
**BURKE BURNS & PINELLI, LTD.**
Three First National Plaza
Suite 4300
Chicago, Illinois 60602
(312) 541-8600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing

**F.H. Paschen, S.N. Nielson, Inc.'s Answer, Affirmative Defense and Counterclaim** was served

upon:

**Matthew Robert Wildermuth**
**Neal R. Novak**
**Mary C Clifford**
The Law Offices of Matthew R. Wildermuth
33 N. LaSalle Street
Suite 1900
Chicago, IL 60602
Attorneys for Milwaukee Mutual Insurance Company

**Amy L. Anderson**
Brenner Ford, Monroe & Scott, Ltd.
33 North Dearborn Street
Suite 300
Chicago, Illinois 60602
Attorneys for Architectural Sealants

**Kenneth M. Florey**
**Samuel B. Cavnar**
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
20 North Clark Street
Suite 900
Chicago, Illinois 60602
Attorneys for Harper College and
Illinois Capital Development Board

Via ECF and by placing same in a properly addressed stamped envelope and causing same to be

mailed via United States mail on this 7th day of March, 2008.

_____
/s/ Christopher J. Hales
One of the Attorneys



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

FILED

MAR 0 7 2008  NH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAR 0 7 2008

MILWAUKEE MUTUAL INSURANCE )
COMPANY,                     )
                             )
              Plaintiff,     )
                             )
       v.                    )
                             )
ARCHITECTURAL SEALANTS, INC., )
F.H. PASCHEN, S.N. NIELSEN, INC, )
BOARD OF TRUSTEES OF WILLIAM )
RAINEY HARPER COLLEGE NO.    )
512 and ILLINOIS CAPITAL     )
DEVELOPMENT BOARD,           )
                             )
              Defendants.    )

No:. 08 C 00029

Hon. Judge Wayne R. Andersen

Magistrate Judge Keys

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF F.H. PASCHEN, S.N. NIELSEN, INC. TO COMPLAINT FOR DECLARATORY JUDGMENT

Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**. ("Paschen"), by its undersigned

counsel, provides the following Answer to the Complaint of Plaintiff **MILWAUKEE**

**MUTUAL INSURANCE** ("Milwaukee").

### PARTIES

1.    Milwaukee Mutual Insurance Company, n/k/a Milwaukee Insurance Company
("Milwaukee"), is a wholly owned subsidiary of Mutual Insurers Holding Company of
Brookfield, Wisconsin, a mutual holding company organized under the laws of the State of
Wisconsin with its principal executive offices and place of business in Brookfield, Wisconsin.

**ANSWER**:    **Paschen is without knowledge or information sufficient to form a**

**belief as to the truth or falsity of the allegations contained in Paragraph One and therefore**

**it neither admits nor denies same but demands strict proof thereof.**

2.    Architectural Sealants Inc. ("ASI") is an Illinois corporation with its principal
place of business in Monee, Illinois.

**ANSWER**:   Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Two and therefore it neither admits nor denies same but demands strict proof thereof.

3.    F.H. Paschen, S.N. Nielsen, Inc. ("Paschen") is an Illinois corporation with its place of business in Chicago, Illinois.

**ANSWER**:   Paschen admits it is an Illinois corporation.  The remainder of the allegations contained in Paragraph Three state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.

4.    Board of Trustees of William Rainey Harper College No. 512 and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 ("Underlying Plaintiffs") are plaintiffs in an action styled *Board of Trustees of William Rainey Harper College No. 512, and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 v. Burnidge, Cassell and Associates, Inc., and F.H. Paschen, S.N. Nielsen, Inc.*, No. 06 L 005812 pending in the Circuit Court of Cook County, Illinois and are nominal but necessary parties to this declaratory judgment action.  They have been joined herein solely to be bound by the judgment to be rendered in this case and no specific relief is sought against them.  In the event that Underlying Plaintiffs stipulate and agree to be bound by the judgment entered in this cause, then Milwaukee will voluntarily dismiss them from this action.  Milwaukee alleges on information and belief that the Underlying Plaintiffs are entities organized and existing under the laws of Illinois with their principal places of business in Palatine, Illinois and Springfield, Illinois respectively.

**ANSWER**:   Paschen admits that the Board of Trustees of William Rainey Harper College No. 512 and Illinois Capital Development Board are the plaintiffs in a certain pending action against Paschen in the Circuit Court of Cook County.  Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph Four and therefore it neither admits nor denies same but demands strict proof thereof.

## JURISDICTION AND VENUE

5.      Jurisdiction in this matter is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds the sum of $75,000 exclusive of interests and costs as the claim involves a defense tender and request for indemnity in a case in which total damages are alleged to be over $2,280,000.

**ANSWER:   The allegations contained in Paragraph Five state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

6.      Milwaukee brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.*

**ANSWER:   The allegations contained in Paragraph Six state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a)(1).

**ANSWER:   The allegations contained in Paragraph Seven state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

8.      By reasons of the allegations set forth below, a real, immediate and justiciable controversy exists between Milwaukee, ASI and Paschen and will continue to exist between the parties until such time as it is resolved by this Court.

**ANSWER:   The allegations contained in Paragraph Eight state legal conclusions which do not require an answer from Paschen.  To the extent that the allegations contained in Paragraph Eight pleads facts, Paschen denies same and demands strict proof thereof.**

## FACTUAL BACKGROUND

9.      Milwaukee issued Policy No. CPP30776540182 to Architectural Sealants, Inc. for the period October 17, 1999 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate.  A true and correct copy of the 1999 Primary Policy is attached hereto as Exhibit A.

- 3 -

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Nine and therefore it neither admits nor denies same but demands strict proof thereof. In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

10.    Milwaukee issued Umbrella Policy No. UO 30776540082 to Architectural Sealants, Inc. for the period October 17, 1999 until cancelled with an aggregate limit of $5,000,000 and a self-insured retention of $10,000. A true and correct copy of the 1999 Umbrella Policy is attached hereto as Exhibit B.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Ten and therefore it neither admits nor denies same but demands strict proof thereof. In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

11.    Milwaukee issued Policy No. CPP30811530082 to ASI for the period October 17, 2000 until cancelled with limited of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2000 Primary Policy is attached hereto as Exhibit C.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Eleven and therefore it neither admits nor denies same but demands strict proof thereof. In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

12.    Milwaukee issued Policy No. CPP30811530182 to ASI for the period October 17, 2001 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2001 Primary Policy is attached hereto as Exhibit D.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twelve and therefore it neither admits nor denies same but demands strict proof thereof. In addition,

- 4 -

**Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

13.    Milwaukee issued Policy No. CPP 30811530282 to ASI for the period October 17, 2002 until cancelled with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. A true and correct copy of the 2001 Primary Policy is attached hereto as Exhibit E.

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Thirteen and therefore it neither admits nor denies same but demands strict proof thereof. In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

14.    Upon information and belief, Illinois Capital Development Board entered into a contract with Paschen providing that Paschen would be the general contractor for a project at the Performing Arts Center and the conference Center at Harper College.

**ANSWER:    Paschen admits that it entered into a contract with the Capital Development Board for the performance of certain contractually delineated general contractor work for the Harper College Project. Paschen denies the remaining allegations contained in Paragraph Fourteen and demands strict proof thereof.**

15.    Upon information and belief, ASI entered into a subcontract ("Subcontract") with Paschen on June 21, 2000. Pursuant to the Subcontract, ASI was to perform the following tasks at the Performing Arts Center and at the Conference Center at Harper College: bentonite waterproofing was to be applied to the concrete foundation walls and concrete slabs; joint sealants were to be applied to exterior stoops and driveways, slab on grade control joints, interior and exterior masonry expansion joints, interior and exterior precast joints, masonry/precast joints, masonry/precast to existing building joints, interior and exterior hollow metal doors, interior slab edge to masonry and precast walls, interior masonry walls to precast wall panels, and stair stringers. A true and correct copy of the Subcontract is attached hereto as Exhibit F.

**ANSWER:    Paschen admits that it entered into a subcontract with ASI and further states that the allegations contained in Paragraph Fifteen state legal conclusions which do not require an answer from Paschen. To the extent that the remaining allegations**

contained in Paragraph Fifteen pleads facts, Paschen denies same and demands strict proof thereof. In addition, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

16.    On June 5, 2006, the Illinois Capital Development Board filed a complaint styled, *Board of Trustees of William Rainey Harper College No. 512, and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 v. Burnidge, Cassell and Associates, Inc., and F.H. Paschen, S.N. Nielsen, Inc.* ("the Underlying Lawsuit"). A true and correct copy of the Underlying Lawsuit is attached hereto as Exhibit G.

**ANSWER:    Paschen admits the allegations contained in the first sentence of Paragraph Sixteen. Further answering Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

17.    In the Underlying Lawsuit, the Underlying Plaintiffs allege that Paschen breached its express and implied contractual obligations which caused damage including, but not limited to, recessed floor slabs in the auditorium that allowed water intrusion and caused rusting of bolts near a wheelchair lift, improper construction of masonry walls leading to cracking and water infiltration, and leakage of the conference center curtain walls and the dining room roof.

**ANSWER:    The allegations contained in Paragraph Seventeen state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the Complaint in the Underlying Litigation speaks for itself.**

18.    On August 7, 2007, Paschen filed a Third-Party Complaint against a number of parties including ASI. A true and correct copy of the Third Party Complaint is attached hereto as Exhibit H.

**ANSWER:    Paschen admits the allegations contained in the first sentence of Paragraph Eighteen. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

19.    In the Third Party Complaint, Paschen alleges that ASI breached the subcontract by failing to perform its work in a workmanlike manner, free from defects, and/or in conformity with the Subcontract and other project documents. Paschen seeks indemnification from ASI and other relief.

**ANSWER:** **The allegations contained in Paragraph Nineteen state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

20.    By letter dated September 12, 2007, Paschen, through its counsel, tendered its defense of the Underlying Lawsuit to ASI and ASI's insurance carriers, including Milwaukee. A true and correct copy of Paschen's tender letter is attached hereto as Exhibit I.

**ANSWER:** **Paschen admits that it tendered its defense of the Underlying Lawsuit to ASI and its insurance carriers, including Milwaukee. The remaining allegations contained in Paragraph Twenty state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

21.    By letter dated December 28, 2007, Milwaukee denied Paschen's tender on the following grounds:

a.    there are no allegations in the Underlying lawsuit constituting "property damage" or "occurrence" as those terms are defined:

b.    even if there was "property damage" caused by an "occurrence," it is unclear that the damage occurred during the relevant policy periods;

c.    coverage is precluded based on Exclusions j(5), j(6), l, and/or m; and

d.    coverage is barred for failure to give proper notice.

A true and correct copy of the denial letter to Paschen is attached hereto as Exhibit J.

**ANSWER:** **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity as to why "Milwaukee denied Paschen's tender." Paschen denies each and every remaining allegation contained in Paragraph Twenty-One and**

- 7 -

demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

22.    By letter received December 6, 2007, ASI tendered its defense of the Third Party Complaint to Milwaukee. A true and correct copy of ASI's tender letter is attached hereto as Exhibit K.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Two and therefore it neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

23.    By letter dated December 28, 2007, Milwaukee denied ASI's tender on the following grounds:

a.    there are no allegations in the Underlying Lawsuit constituting "property damage" or "occurrence" as those terms are defined;

b.    even if there was "property damage" caused by an "occurrence," it is unclear that the damage occurred during the relevant policy periods;

c.    coverage is precluded based on Exclusions j(5), j(6), l, and/or m; and

d.    coverage is barred for failure to give proper notice.

A true and correct copy of the denial letter to ASI is attached hereto as Exhibit L.

**ANSWER**:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Twenty-Three and therefore it neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.

## COUNT I
### ASI – No Property Damage/No Occurrence

The allegations contained in Count I are not directed against Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**., and accordingly, do not require an answer from them. To the extent the allegations contained in Count I plead facts as to Paschen, Paschen denies each and every such allegation contained in Count I of the Complaint and demands strict proof thereof.

## COUNT II
### ASI – Policies Not Triggered

The allegations contained in Count II are not directed against Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**., and accordingly, do not require an answer from them. To the extent the allegations contained in Count II plead facts as to Paschen, Paschen denies each and every such allegation contained in Count II of the Complaint and demands strict proof thereof.

## COUNT III
### ASI – Coverage Exclusions

The allegations contained in Count III are not directed against Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**., and accordingly, do not require an answer from them. To the extent the allegations contained in Count III plead facts as to Paschen, Paschen denies each and every such allegation contained in Count III of the Complaint and demands strict proof thereof.

## COUNT IV
### ASI – Late Notice

The allegations contained in Count IV are not directed against Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**., and accordingly, do not require an answer from them. To the extent the allegations contained in Count IV plead facts as to Paschen, Paschen denies each

and every such allegation contained in Count IV of the Complaint and demands strict proof thereof.

## COUNT V
### Paschen – No Property Damage/No Occurrence

40.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein.

**ANSWER:    Paschen repeats and realleges its answers to Paragraphs One through Twenty-Three as and for its answers to Paragraph Forty of Count V as if fully set forth herein.**

41.    The Insuring Agreements of the Policies provide:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of …"property damage" to which this insurance applies…

> This insurance applies to…"property damage" only if:

> (1)    The …"property damage" is caused by an "occurrence" …; and

> (3)    The …"property damage" occurs during the policy period.

> "Occurrence' is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."    "Property damage" is defined as:

> (a)    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

> (b)    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Forty-One, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.**

**Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

42.    The Complaint does not allege "property damage" caused by an "occurrence" in that repair and replacement costs constitute economic loss, not "property damage" and construction defects do not constitute an accident or "occurrence." Thus Milwaukee has no duty to defend Paschen under the Policies.

**ANSWER:    The allegations contained in Paragraph Forty-Two state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. To the extent that the allegations contained in Paragraph Forty-Two pleads facts, Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein therefore it neither admits nor denies same but demands strict proof thereof.**

### COUNT VI
### Paschen – Policies Not Triggered

43.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 and 41 as though they were fully set forth herein

**ANSWER:    Paschen repeats and realleges its answers to Paragraphs One through Twenty-Three and Forty-One as and for its answers to Paragraph Forty-Three of Count VI as if fully set forth herein.**

44.    The Underlying Lawsuit does not identify the date(s) when the "property damage" allegedly occurred.

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Forty-Four, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

- 11 -

45.     Since there are no allegations that "property damage" occurred during the policy periods, the Policies are not triggered and there is no coverage available to Paschen thereunder.

**ANSWER:     The allegations contained in Paragraph Forty-Five state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Forty-Five pleads facts, Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein therefore it neither admits nor denies same but demands strict proof thereof.**

## COUNT VII
### Paschen – Coverage Exclusions

46.     Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein

**ANSWER:     Paschen repeats and realleges its answers to Paragraphs One through Twenty-Three as and for its answers to Paragraph Forty-Six of Count VII as if fully set forth herein.**

47.     Section I of the Policies at Exclusions, paragraph j, excludes coverage for "Damage to Property" as follows:

>    (5)     that particular part of real property on which you…are performing operations, if the "property damage" arises out of those operations; or
>
>    (6)     That particular part of any property that must be restored, repair or replaced because "your work" was incorrectly performed on it.

**ANSWER:     Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Forty-Seven, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

- 12 -

48.     If the Policies are triggered, coverage is excluded pursuant to Paragraphs j(5) and j(6).

**ANSWER:   The allegations contained in Paragraph Forty-Eight state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Forty-Eight pleads facts, Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein therefore it neither admits nor denies same but demands strict proof thereof.**

49.     Section I of the Policies at Exclusions, paragraph l, excludes coverage for "Damage to Your Work" as follows:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".  This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**ANSWER:   Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Forty-Nine, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

50.     If the Policies are triggered, to the extent that the alleged "property damage" occurred after ASI completed its work, there is no coverage available to Paschen under the Policies pursuant to Paragraph l.

**ANSWER:   The allegations contained in Paragraph Fifty state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Fifty pleads facts, Paschen is without knowledge or information sufficient to**

- 13 -

form a belief as to the truth or falsity of the allegations contained therein therefore it

neither admits nor denies same but demands strict proof thereof.

      51.    Section I of the Policies at Exclusions, paragraph m, excludes coverage for "Damage to Impaired Property or Property not Physically Injured" as follows:

> "property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"…
>
> "Impaired property" is defined as "tangible property, other than 'your product' or 'your work' that is known or thought to be defective, deficient…if such property can be restored to use by:  a.  the repair, replacement, adjustment or removal of 'your product' or 'your work'…."

**ANSWER:**    **Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Fifty-One, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

      52.    If the Policies are triggered, coverage is excluded pursuant to Paragraph m.

**ANSWER:**    **The allegations contained in Paragraph Fifty-Two state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Fifty-Two pleads facts, Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein therefore it neither admits nor denies same but demands strict proof thereof.**

- 14 -

## COUNT VIII
### Paschen – Late Notice

53.    Milwaukee realleges and reiterates each and every allegation contained in Paragraphs 1 through 23 as though they were fully set forth herein

**ANSWER:    Paschen repeats and realleges its answers to Paragraphs One through Twenty-Three as and for its answers to Paragraph Fifty-Three of Count VIII as if fully set forth herein.**

54.    Condition 2 of the Policies provides that "you" must notify Milwaukee as soon as practicable of (1) an "occurrence" that may result in a claim; (2) a claim that has been made; or (3) "suit" that has been brought against any insured.  Condition 2(c) requires all insureds to immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'."

**ANSWER:    Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph Fifty-Four, and, therefore, Paschen neither admits nor denies same but demands strict proof thereof. Further answering, Paschen states that the documents attached to the Complaint as Exhibits speak for themselves.**

55.    Milwaukee was not notified of the occurrence or the Underlying Lawsuit and did not receive copies of any notices, summonses or legal papers until more than one year after litigation had commenced and after settlement negotiations had taken place.  Thus, coverage is barred based on Condition 2.

**ANSWER:    The allegations contained in Paragraph Fifty-Five state legal conclusions which do not require an answer from Paschen and, therefore, Paschen neither admits nor denies same but demands strict proof thereof.  To the extent that the allegations contained in Paragraph Fifty-Five pleads facts, Paschen is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein therefore it neither admits nor denies same but demands strict proof thereof.**

WHEREFORE, Defendant **F.H. PASCHEN, S.N. NIELSEN, INC.** respectfully requests that this Court dismiss Plaintiff **MILWAUKEE MUTUAL INSURANCE'S** complaint is its entirety with prejudice, and award Paschen any further legal and/or equitable relief which it may be entitled.

### AFFIRMATIVE DEFENSES TO COUNTS V-VIII
### OF MILWAUKEE'S COMPLIANT

**F.H. PASCHEN, S.N. NIELSEN, INC.** ("Paschen") provides the following Affirmative Defenses to Counts V through VIII of the Complaint of Plaintiff **MILWAUKEE MUTUAL INSURANCE** ("Milwaukee").

### FIRST AFFIRMATIVE DEFENSE:
### ESTOPPEL

Milwaukee is precluded from raising any policy defense to coverage and its claims in Counts V-VIII against Paschen are barred by the doctrine of estoppel because Milwaukee failed to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time.  Paschen first tendered its defense to Architectural Sealants Inc. ("ASI") on or around May 14, 2007.  See the May 14, 2007 letter attached to hereto as Exhibit A  This initial tender included direction to ASI to notify its insurance carriers of the potential for liability related to lawsuit styled as *Board of Trustees of William Rainey Harper College No. 512 et al., v. Burnidge, Cassell and Associates, Inc. et al,* No. 06 L 005812 pending in the Circuit Court of Cook County, Illinois ("Underlying Litigation").

On September 12, 2007, Paschen drafted an additional letter to ASI tendering Paschen's defense and repeated its prior direction to ASI to notify its insurers of the Underlying Litigation, the Third-Party Complaint Paschen filed against ASI and its contractual duty to indemnify and

defend Paschen.  See the September 12, 2007 letter attached hereto as Exhibit B.  Paschen finally

received from Milwaukee a declination of coverage letter on or around December 28, 2007.

Because Milwaukee failed to defend Paschen, respond to Paschen's tender of the Underlying

Litigation or file its Complaint for Declaratory Judgment within a reasonable time, Milwaukee is

precluded from raising any policy defense to coverage and its claims in Counts V-VIII against

Paschen are barred by the doctrine of estoppel.

## SECOND AFFIRMATIVE DEFENSE:
## IN THE ALTERNATIVE OF ESTOPPEL – UNREASONABLE DELAY
## CAUSING PREJUDICE TO PASCHEN

Paschen repeats and realleges the allegations in its First Affirmative Defense as if fully

set forth herein.  Milwaukee has caused prejudice to Paschen because Milwaukee has failed to

defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint

for Declaratory Judgment within a reasonable time,

Therefore, in the alternative, Milwaukee is precluded from raising any policy defense to

coverage and its claims in Counts V-VIII against Paschen are barred because Milwaukee failed

to defend Paschen, respond to Paschen's tender of the Underlying Litigation or file its Complaint

for Declaratory Judgment within a reasonable time.

## THIRD AFFIRMATIVE DEFENSE:
## LACHES

Paschen repeats and realleges the allegations in its First Affirmative Defense as if fully

set forth herein.  Milwaukee failed to defend Paschen, respond to Paschen's tender of the

Underlying Litigation or file its Complaint for Declaratory Judgment within a reasonable time.

As such, Milwaukee's failure to timely assert known rights has caused prejudice to Paschen.

Because Milwaukee failed to defend Paschen, respond to Paschen's tender of the Underlying

Litigation or file its Complaint for Declaratory Judgment within a reasonable time, Milwaukee's claims in Counts V-VIII against Paschen are barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE:
## WAIVER

Paschen repeats and realleges the allegations in its First Affirmative Defense as if fully set forth herein. Milwaukee, by its conduct inconsistent with an intent to enforce known rights, voluntarily and intentionally relinquished known rights under the subject insurance policy. Because Milwaukee failed to act with an intent to enforce known rights, Milwaukee's claims contained in Counts V-III against Paschen are barred by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE:
## UNCLEAN HANDS

Paschen repeats and realleges the allegations in its First Affirmative Defense as if fully set forth herein. Because Milwaukee has acted vexatiously, unreasonably and in bad faith by failing to defend Paschen, respond to Paschen's tender of defense and indemnity for the Harper litigation, or file its Complaint for Declaratory Judgment within a reasonable amount of time, its claims in Counts V-VIII against Paschen are barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE:
## FAILURE TO NAME NECESSARY PARTIES

Paschen repeats and realleges the allegations in its First Affirmative Defense as if fully set forth herein. As listed in Paschen's September 12, 2007, letter, at least five (4) other insurance companies (Illinois National Insurance Co., U.S. Specialty Insurance Co., Muirfield, and Virginia Surety Company, Inc., not including Pekin Insurance Company which has already filed suit in State Court) may be necessary parties to this lawsuit. Each of the aforementioned insurance companies may have subrogation and/or contribution rights with respect to the insurance policies issued by Milwaukee that are at issue in this declaratory action. Because not

all of the necessary parties are named in this declaratory action, Milwaukee's claims in Counts V-VIII against Paschen are barred.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant/Counter-Plaintiff **F.H. PASCHEN, S.N. NIELSEN, INC.** (herein "Paschen"), provides the following Counterclaim for Declaratory Judgment against **MILWAUKEE MUTUAL INSURANCE**.

1.    F.H. Paschen, S.N. Nielsen, Inc. (hereinafter "Paschen") is an Illinois corporation.

2.    Upon information and belief, Milwaukee Mutual Insurance Company, n/k/a Milwaukee Insurance Company ("Milwaukee") is a Wisconsin corporation with its principal place of business in Brookfield, Wisconsin.

3.    Upon information and belief, Architectural Sealants Inc. ("ASI") is an Illinois corporation with its principal place of business in Monee, Illinois.

4.    Board of Trustees of William Rainey Harper College No. 512 ("Harper") and Illinois Capital Development board (hereinafter "CBD") are the plaintiffs in a certain pending action against Paschen, which will be more fully described later herein (collectively the "Underlying Plaintiffs").

5.    Paschen entered into a contract with CDB to perform certain delineated construction work, CDB Project No. 810-032-016, FHP Contract No. 50-0735-81 ("the Harper Project").

6.    ASI entered into a subcontract with Paschen to perform certain construction work on the Harper Project.

7.    ASI, without ambiguity, agreed in its subcontract with Paschen to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work

- 19 -

provided by ASI for the Harper Project.

8.    On information and belief and due to its contractual obligations to Paschen, ASI contracted with Milwaukee (and other such insurance companies) to issue policy/policies to satisfy the terms of the subcontract, namely to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work provided by ASI for the Harper Project.

9.    Furthermore, as part of ASI's duties under its subcontract with Paschen, Paschen was to enjoy "additional named insurance status" under the language of ASI's insurance policy/polices which further contain coverage insuring ASI's indemnity obligations.

10.    On June 5, 2006, Defendants Board of Trustees of William Rainey Harper College No. 512 ("Harper") and Illinois Capital Development board ("CBD") filed a complaint against Paschen and Burnidge, Cassell and Associates, Inc. ("Underlying Litigation").

11.    The Complaint filed by Harper and CDB in the Underlying Litigation contained only vague allegations relating to allegedly defectively constructed/designed portions of the Wojik Conference Center and the Performing Arts Center Project at Harper College.  See Exhibit G of Milwaukee's Complaint.

12.    Paschen is an additional insured on the Milwaukee policies issued to ASI pursuant to an additional insured endorsement, attached to Milwaukee's Complaint as Exhibits A through E.

13.    ASI, and its insurers, owe both a defense and indemnity for loss to Paschen.

14.    Paschen tendered its defense to certain subcontractors who performed construction work on the Harper Project, including ASI, on May 14, 2007.  See May 14, 2007 tender, a copy of which is attached hereto as Exhibit A.

15.    In its May 2007 letter, Paschen advised ASI to "notify your insurance carrier that a potential liability exists." See Ex. A, p. 2, ¶4.

16.    On August 7, 2007, Paschen filed its First Amended Third Party Complaint, naming ASI as one of the third-party defendants in the Underlying Litigation ("Underlying Third-Party Action"). See Exhibit H of the Milwaukee Complaint.

17.    On September 12, 2007, Paschen, in response to a letter from the Underlying Plaintiffs dated August 24, 2007, sent another letter to ASI and Thilman & Filippini, LLC, agent of Milwaukee, to again tender Paschen's defense and again advised ASI and Thilman & Filippini, LLC, to notify its insurers of the Harper Complaint, the Third-Party Complaint and ASI's contractual duty to indemnify Paschen. See the September 12, 2007 letter attached hereto as Exhibit B.

18.    Paschen stated in its September 12, 2007 letter that it "was named as an additional insured under certain insurance policies provided by ASI, including, without limitation, policies issued by Milwaukee Mutual Insurance Co., Illinois National Insurance Co., U.S. Specialty Insurance Co., Muirfield, and Virginia Surety Company, Inc." See Ex. B, p. 1, ¶2.

19.    On or around December 28, 2007, Paschen received from Milwaukee a declination of coverage letter.

20.    Milwaukee has a duty and obligation to defend and indemnify Paschen in the Underlying Litigation.

21.    Upon information and belief, Milwaukee denies it has a duty or obligation to defend or indemnify Paschen in the Underlying Litigation.

22.    Paschen is entitled to a judicial determination concerning the scope and nature of its rights under the policies at issue herein and those of all other parties to this action with respect

to the Underlying Litigation and underlying third-party action.

WHEREFORE, Defendant **F.H. PASCHEN, S.N. NIELSEN, INC**. requests that this Court enter a judgment and order declaring the rights and obligation of Paschen, ASI, CDB, Harper and Milwaukee as follows:

a.    That there is coverage afforded under the policy issued by Milwaukee to Paschen with respect to defense obligations, indemnity obligations, obligations to pay judgments against Paschen in connection with the Underlying Litigation and the Underlying Third-Party Action;

b.    That Milwaukee is obligated under the policy to defend, to pay defense costs and/or to indemnify Paschen with respect to the Underlying Litigation and the Underlying Third-Party Action.

c.    That Milwaukee is obligated under the policy to pay or indemnify Paschen for any judgment, award or settlement entered in the Underlying Litigation or Underlying Third-Party Action; and

d.    Milwaukee is estopped from denying coverage or asserting policy defenses.

Respectfully submitted,
**F.H. PASCHEN, S.N. NIELSEN, INC.**

By:    /c/ Christopher J. Hales
          One of the Attorneys for F.H. Paschen

Ellen B. Epstein #6187521
Christopher J. Hales #6280150
**BURKE BURNS & PINELLI, LTD.**
Three First National Plaza
Suite 4300
Chicago, Illinois 60602
(312) 541-8600

- 22 -

# BURKE BURNS & PINELLI, LTD.

ATTORNEYS AT LAW
SUITE 4300
THREE FIRST NATIONAL PLAZA
CHICAGO, ILLINOIS 60602-4229

EDWARD J. BURKE
MARY PATRICIA BURNS
VINCENT D. PINELLI
MARY ANN MURRAY
STEPHEN F. WELCOME
ELLEN B. EPSTEIN
DONALD F. HARMON
AMANDA RIPP
ADRIANA R. GABRIEL
BLANCA R. DOMINGUEZ

TELEPHONE
(312) 541-8600

FACSIMILE
(312) 541-8603

May 14, 2007

**VIA OVERNIGHT MAIL**

Architectural Sealants, Inc.
6525 West Steger Road
Monee, Illinois 60449

Attn: Mr. Tom Best

> **Re:**   **Performing Arts Center & Industrial Conference Center**
> **William Rainey Harper College**
> **CDB Project No. 810-032-016**
>
> **Board of Trustees of Harper College v. Burnidge, Cassell and Associates**
> **and F.H. Paschen, S.N Nielsen, Inc.**
> **Case No. 06 L 005812**

Dear Mr. Best:

I am one of the attorneys for F.H. Paschen, S.N. Nielsen, Inc. ("Paschen"). In the summer of 2006 the Board of Trustees of Harper College ("Harper") filed suit against Burnidge, Cassell and Associates ("Burnidge") and Paschen. See copy of Complaint enclosed herewith. In the Complaint Harper alleged that both Paschen and Burnidge breached their respective contracts due to alleged "defects" as listed in Paragraph 29 (Count I-Burnidge) and Paragraph 35 (Count II-Paschen). Except for the allegations contained in Paragraph 29 against Burnidge regarding design defects, the alleged claims are the same as against both Paschen and Burnidge. No further detail was, or has been, provided regarding the nature or scope of the alleged "defects". Harper claimed damages in an unspecified amount.

To date, Harper has not made any specific assignment of alleged fault nor any request for remediation. Lastly, until mid-April 2007, Harper had not provided any "cost" in relation to any claimed remediation.



EXHIBIT
A

*BURKE BURNS & PINELLI, LTD.*

Architectural Sealants, Inc.
May 14, 2007
Page 2

In mid-April 2007, after repeated requests for greater detail regarding the scope of the claims and the alleged costs of any potential remediation (commencing in the summer of 2006), Harper, through its counsel and for the first time, provided the enclosed correspondence listing 15 claimed remediation items along with an alleged lump sum cost to repair or replace. See attached April 12, 2007 Letter.

No other information has been provided by Harper. Thus, at this time, the exact nature, cause and extent of the fifteen claimed items, as well as the need for, and scope of, any remediation, remains unknown.

Please further note that Harper indicates its desire to "Replace the Leaking Curtain Wall" by "May 21, 2007" and that such "work" has been bid. See April 12, 2007 Letter. Even though said "work" has been defined in scope in the bid, we have been notified that certain undefined "water testing" will be performed on the "curtain wall" on May 22rd and May 23rd, 2007. If you wish to have someone from Architectural Sealants in attendance please advise. Recently additional information has been provided regarding the scope of testing. If you desire copies of same, or of the "bid documents", please contact Jim Blair at Paschen.

Accordingly, please notify your insurance carrier that a potential liability exists. In addition, please be advised that examination and testing of the "curtain wall" along with observation of the demolition and re-construction of the "curtain wall" is being made available at this time.

Please also find enclosed copies of two letters from Wiss, Janey, Elstner Associates, Inc. dated December 13, 2004 and June 12, 2006. The June 12th letter was received by Paschen for the first time on April 25, 2007.

If you have any questions regarding the above, please feel free to contact Jim Blair at F.H. Paschen, (773)444-3474.

Very truly yours,
**BURKE BURNS & PINELLI, LTD.**

Ellen B. Epstein

EBE/ap
cc: F.H. Paschen, S.N. Nielsen, Inc.

**UPS Next Day Air**
**UPS Worldwide Express**

Shipping Document

See instructions on back. Visit UPS.com® or call 1-800-PICK-UPS® (800-742-5877) for additional information and UPS Tariff/Terms and Conditions.

**TRACKING NUMBER** 1Z FA5 390 22 1005 4599

**① SHIPMENT FROM**

**SHIPPER'S UPS ACCOUNT NUMBER** F A 5 3 9 0

**REFERENCE NUMBER** 24036

**NAME** Ellen B. Epstein  **TELEPHONE** 312-541-8600

**COMPANY** BURKE BURNS & PINELLI, LTD

**STREET ADDRESS** 3 FIRST NATIONAL PLZ RM STE#4300

**CITY AND STATE** CHICAGO  **ZIP CODE** IL 60602-5010

**② EXTREMELY URGENT DELIVERY TO**

**NAME** Tom Best  **TELEPHONE**

**COMPANY** Architectural Sealants, Inc.

**STREET ADDRESS** 6525 West Steger Road  **DEPT./FLR.**  [✗] Residential Delivery

**CITY AND STATE (INCLUDE COUNTRY IF INTERNATIONAL)** Monee  **ZIP CODE** IL 60449

**③ WEIGHT** Enter "LTR" if Letter  **BILLABLE WEIGHT** If Applicable  **LARGE PACKAGE**  **④ SHIPPER RELEASE**  1 1

**⑤ TYPE OF SERVICE**

[✗✗] NEXT DAY AIR  [ ] EXPRESS (INT'L)

**CHARGES**

FOR WORLDWIDE EXPRESS SHIPMENTS
Mark an "X" in this box if shipment only contains documents of no commercial value.

[ ] DOCUMENTS ONLY  $

**⑥ OPTIONAL SERVICES**

[ ] SATURDAY PICKUP See instructions  [ ] SATURDAY DELIVERY See instructions  $

[ ] DECLARED VALUE FOR CARRIAGE Carrier's auto automatic are protected up to $100. For declared value over $100, see instructions  $ ___ AMOUNT  $

[ ] C.O.D. C.O.D., enter amount to be collected and attach completed UPS C.O.D. tag to package.  $ ___ AMOUNT  $

**⑦ ADDITIONAL HANDLING CHARGE** [ ] An Additional Handling Charge applies for certain items. See instructions.

**TOTAL CHARGES**  $

**⑧ METHOD OF PAYMENT**

[ ] BILL SHIPPER'S ACCOUNT NUMBER  [ ] BILL RECEIVER  [ ] BILL THIRD PARTY  [ ] CREDIT CARD

DUAL UC ONLY

American Express
Diner's Club
MasterCard
Visa

[ ] IN SECTION 9  [ ] RECORD ACCOUNT NO. IN SECTION 9

[ ] CHECK

**⑨ RECEIVER'S/THIRD PARTY'S UPS ACCT. NO. OR MAJOR CREDIT CARD NO.**  **EXPIRATION DATE**

**THIRD PARTY'S COMPANY NAME**

**STREET ADDRESS**

**CITY AND STATE**  **ZIP CODE**

The shipper indicates UPS is its forwarding agent for export control and customs purposes. The shipper certifies that these commodities, technology or software were exported in accordance with the Export Administration Regulations. Diversion contrary to U.S. law is prohibited.

**⑩ SHIPPER'S SIGNATURE** X Burke Burns & Pinelli, Ltd.  **DATE OF SHIPMENT** 5/ 15 /07

All shipments are subject to the terms contained in the UPS Tariff/Terms and Conditions of Service, which are available at ups.com and local UPS offices.

01019112026Q9 1/07 S  **SHIPPER'S COPY**

# BURKE BURNS & PINELLI, LTD.

*ATTORNEYS AT LAW*
*SUITE 4300*
*THREE FIRST NATIONAL PLAZA*
*CHICAGO, ILLINOIS 60602-4229*

*EDWARD J. BURKE*
*MARY PATRICIA BURNS*
*VINCENT D. PINELLI*
*MARY ANN MURRAY*
*STEPHEN F. WELCOME*
*ELLEN B. EPSTEIN*
*DONALD F. HARMON*
*AMANDA RIPP*
*ADRIANA R. GABRIEL*
*BLANCA R. DOMINGUEZ*
*CHRISTOPHER J. HALES*

*TELEPHONE*
*(312) 541-8600*

*FACSIMILE*
*(312) 541-8603*

September 12, 2007

**VIA OVERNIGHT MAIL**

Architectural Sealants, Inc.
6525 West Steger Road
Monee, Illinois
c/o Registered Agent
Corporation Agents, Inc.
611 South Milwaukee Avenue
Libertyville, Illinois 60048

Thilman & Filippini LLC
One East Wacker Drive
Suite 1800
Chicago, Illinois 60601

Re:    **Board of Trustees of Harper College, et al v. Burnidge Cassell et al.**
      **Case No. 06 L 005812 (Circuit Court of Cook County, Illinois)**

      **William Rainey Harper College**
      **Performing Arts and Conference Centers**
      **CDB Project No. 810-032-016, CDB Contract No. 50-0735-81**

To:    Architectural Sealants, Inc. and Thilman & Fillippini

      I am one of the attorneys for F.H. Paschen, S.N. Nielsen, Inc. ("Paschen"), a named party Defendant and Third Party Plaintiff in the above-captioned litigation (the "Litigation"). Third-Party Defendant Architectural Sealants, Inc. ("Architectural") was one of Paschen's subcontractors in relation to the above captioned Harper College project (the "Project"). Plaintiffs in the Litigation claim multiple alleged defects in the construction (and design) as alleged in the Complaint and in two letters tendered by counsel for Plaintiffs dated April 12 and August 24, 2007. I have enclosed another copy of the Complaint and the April 12th Letter (sent under cover of Paschen's May 14th Letter) and also enclose a copy of the August 24th letter.

      This is in follow-up to Paschen's written notice and tender of May 14, 2007. As explained in that letter the claims by Plaintiffs in the Litigation arise out of, in whole or in part, the Project work and activities performed by Architectural. In addition, Paschen was named as an additional insured under certain insurance policies provided by Architectural, including, without limitation, policies issued by Milwaukee Mutual Insurance Co., Illinois National Insurance Co., U.S. Specialty Insurance Co., Muirfield, and Virginia Surety Company, Inc.

**EXHIBIT**

*B*

*BURKE BURNS & PINELLI, LTD.*

September 12, 2007
Page Two

Architectural, without ambiguity, agreed in its subcontract to indemnify and hold Paschen harmless from any and all claims made against Paschen arising from the work provided by Architectural for the Project. Also, Paschen, without question, enjoys additional named insured status under the language of Architectural's insurance policies which further contain coverage insuring Architectural's indemnity obligations. Under Illinois law Architectural's policies are primary and owe both a defense and indemnity for loss to Paschen. Architectural has no basis to impose upon Paschen and its insurers the expense involved in defending the claims made by Plaintiffs in this Litigation.

Accordingly, pursuant to the terms of that certain Subcontract Agreement and the insurance policies tendered thereunder, Paschen hereby tenders its defense in relation to all matters arising out of the above captioned Litigation to Architectural to protect and save harmless Paschen from any loss, judgment, cost or expense, including legal fees, connected with the Litigation and thus, hereby demands that Architectural defend and protect all of Paschen's interest in this Litigation, that Architectural appoint qualified counsel to represent Paschen, to pay all costs and expenses incurred as a result of such representation and to pay any judgment entered against Paschen, if any, including, without limitation, any interest costs or expenses.

Please have an authorized representative of Architectural accept this tender by sending, within five days hereof, via e-mail or facsimile, the Acknowledgment provided herein reflecting Architectural's acceptance of this tender. In addition, please provide the name, address and telephone number of the attorney who will be handling this matter on behalf of Paschen in the future. Should you fail or refuse to accept further handling of Plaintiffs claims on behalf of Paschen, you are hereby placed on notice that Paschen may exercise its right of indemnifications against Architectural in a separate indemnity action.

Paschen otherwise reserves all of its rights, remedies and causes of action that it may have against Architectural and its liability insurers with respect to any damage suffered by Paschen as a result of any past and/or present action on the part of Architectural or its insured with respect to the Litigation. Further this tender does not waive Paschen's right, in its sole discretion, to retain other counsel to represent its interests in this Litigation at any time hereafter or to thereafter seek reimbursement for all resultant loss, costs, fees and expenses under the terms of the Subcontract Agreement, the policies and Illinois law.

Please contact me if you have any questions regarding the foregoing.

Very truly yours,
**BURKE BURNS & PINELLI, LTD.**

Ellen B. Epstein

EBE/ap
cc: F.H. Paschen, S.N. Nielsen, Inc.

*BURKE BURNS & PINELLI, LTD.*

September 12, 2007
Page Three

## ACCEPTANCE AND ACKNOWLEDGMENT

I, _____, _____, on behalf of **ARCHITECTURAL SEALANTS, INC.**, hereby accept Paschen's tender of the defense as requested herein and agree to defend and protect all of Paschen's interest in this Litigation, to appoint a qualified attorney to represent Paschen, to pay all fees, costs and expenses incurred as a result of such representation, and to pay any judgment entered against Paschen, if any, including, without limitation, any interest, costs and expenses charged thereon.

**ARCHITECTURAL SEALANTS, INC.**

By:_____

Its: _____

Dated: _____