IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| MILWAUKEE MUTUAL INSURANCE, COMPANY, n/k/a Milwaukee Insurance Company )<br><br>Plaintiff, )<br><br>v. )<br><br>ARCHITECTURAL SEALANTS, INC., F.H. PASCHEN, S.N. NIELSEN, INC, BOARD OF TRUSTEES OF WILLIAM RAINEY HARPER COLLEGE NO 512, and ILLINOIS CAPITAL DEVELOPMENT BOARD )<br><br>Defendants. ) | Case No : 08 C 00029<br><br>Hon Judge Wayne R. Andersen<br><br>Magistrate Judge Keys |

### MILWAUKEE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**NOVAK LAW OFFICES**
Neal R. Novak, Esq. (#06181620)
Matthew R. Wildermuth (#06202106)
Renata Biernat (#06285752)
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
(312) 425-2500 Telephone
(312) 425-2525 Facsimile

## TABLE OF AUTHORITIES

**CASES**                                                                                   Page

*American Econ. Ins. Co. v. Holabird & Root,*
2008 Ill. App. LEXIS 258, 886 N.E.2d 1116 (Ill. App. Ct. 1st Dist. 2008) .................... 7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S.Ct. 2505 (1986) .................................................................... 2

*Celotex Corp. v. Catrett,*
477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ......................................... 2

*Country Mutual Insurance Co. v. Livorsi Marine, Inc.,*
222 Ill.2d 303, 856 N.E.2d 338 (2006) ................................................................ 13

*Equity General Insurance Co. v. Patis,*
119 Ill. App. 3d 232, 456 N.E.2d 348 (1st Dist. 1983) ........................................... 14

*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.,*
70 Ill. App. 3d 296, 388 N.E.2d 253 (3rd Dist. 1979) ............................................ 14

*IMC Global v. Continental Ins. Co., et al.,*
378 Ill. App. 3d 797, 883 N.E.2d 68 (1st Dist. 2007) ............................................ 14

*Indiana Ins. Co. v. Hydra Corp.,*
245 Ill. App. 3d 926, 615 N.E.2d 70 (2d Dist. 1993) ............................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (*citing United States v. Diebold, Inc.,* 369
U.S. 654, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)) .................................................... 2

*Millers Mutual Insurance Association of Illinois v. Graham Oil Co., et al.,*
282 Ill. App. 3d 129, 668 N.E.2d 223 (2nd Dist. 1996) .......................................... 14

*Monticello Insurance Co. v. Wil-Freds Const., Inc.,*
277 Ill. App. 3d 697, 661 N.E.2d 451 (2d Dist. 1995) ........................................... 7-9

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.,*
154 Ill. 2d 90, 607 N.E.2d 1204 (1992) ................................................................ 6

*Simmon v. Iowa Mutual Casualty Co.,*
3 Ill. 2d 318, 121 N.E.2d 509 (1954) .................................................................. 14

*Stoneridge Development Company, Inc., et al. v. Essex Insurance Co.,*
2008 Ill. App. LEXIS 416 (2008) ........................................................................ 7-8

*Twin City Fire Ins. Co. v. Old World Trading Co.,*
266 Ill. App. 3d 1, 639 N.E.2d 584 (1st Dist. 1993) .................................................................. 14

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,*
223 Ill. 2d 352, 860 N.E.2d 307 (2006) ..................................................................................... 13

*Viking Construction Management, Inc. v. Continental Casualty Company,*
358 Ill. App. 3d 34, 831 N.E.2d 1 (1st Dist., 2005) ................................................................ 7-8

**STATUTES**                                                                                    Page

*Fed. R. Civ. P. 56(c)* ..................................................................................................................... 2

*Fed. R. Civ. P. 56(e)* ..................................................................................................................... 2

I.  **PRELIMINARY STATEMENT**

Plaintiff, MILWAUKEE MUTUAL INSURANCE COMPANY, n/k/a Milwaukee Insurance Company ("Milwaukee") seeks a declaration that it owes no duty to defend and consequently no duty to indemnify Defendants ARCHITECTURAL SEALANTS, INC ("ASI") and F H PASCHEN, S.N. NIELSEN, INC ("Paschen") in the case captioned *Board of Trustees of William Rainey Harper College No 512 and Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No 512 v Burnidge, Cassell and Associates, Inc, and F.H.Paschen, S.N Nielsen, Inc*, No. 06 L 005812, pending in the Circuit Court of Cook County, Illinois, ("the Harper College Action") for the following reasons:

(1)  the Harper College Action does not allege "property damage" caused by an "occurrence" within the meaning of the Milwaukee Policies and therefore the Policies are not triggered;

(2)  the Harper College Action does not allege that "property damage" as defined in the Milwaukee Policies occurred during the policy period and therefore the Policies are not triggered;

(3)  strictly in the alternative, to the extent that the Milwaukee Policies are triggered, coverage is barred by the "Damage to Property" Exclusion;

(4)  strictly in the alternative, to the extent that the Milwaukee Policies are triggered, coverage is barred by the "Damage to Your Work" Exclusion;

(5)  strictly in the alternative, to the extent that the Milwaukee Policies are triggered, coverage is barred by the "Damage to Impaired Property or Property not Physically Injured Exclusion";

(6)  strictly in the alternative, to the extent that the Milwaukee Policies are triggered, coverage is barred for Paschen because it failed to provide timely notice.

1

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed R Civ P 56(c)*. The moving party bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion *Matsushita Elec. Indus Co v Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct 1348 (1986) (*citing United States v Diebold, Inc*, 369 U.S. 654, 8 L. Ed. 2d 176, 82 S Ct. 993 (1962))

Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Fed R Civ P 56(e)* The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S at 586 "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v Liberty Lobby, Inc*, 477 U.S. 242, 249, 106 S.Ct 2505 (1986).

## III. UNDISPUTED FACTS

1    Milwaukee issued the following Policies to ASI (hereinafter collectively referred to as "the Milwaukee Policies"):

2

| POLICY | EFFECTIVE DATES | LIMITS |
|---|---|---|
| CPP30776540182 | 10/17/99 until cancelled | $1,000,000/occurrence and $2,000,000/aggregate |
| Umbrella Policy UO30776540182 | 10/17/99 until cancelled | $5,000,000/aggregate and $10,000/self-insured retention |
| CPP30811530082 | 10/17/00 until cancelled | $1,000,000/occurrence and $2,000,000/aggregate |
| CPP30811530182 | 10/17/01 until cancelled | $1,000,000/occurrence and $2,000,000/aggregate |
| CPP30811530282 | 10/17/02 until cancelled[1] | $1,000,000/occurrence and $2,000,000/aggregate |

See Milwaukee's Local Rule 56.1 Statement of Undisputed Facts ("LR") ¶1.

2. Under Insuring Agreement A – "Bodily Injury and Property Damage Liability," the Milwaukee Policies[2] provide:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies . . .
>
> * * *
>
> This insurance applies to . . "property damage" only if:
>
> (2) The . . "property damage" is caused by an "occurrence" . . ; and
>
> (3) The . . . "property damage" occurs during the policy period. LR ¶2

3. "Occurrence" is defined in the Milwaukee Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." LR ¶3.

4. "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it. LR ¶4.

---

[1] As evidenced by the certification page, this Policy was canceled on October 17, 2003. LR ¶1 at footnote 1

[2] Citations herein to paragraphs in the Milwaukee Policies are identical in each of the four General Liability Policies (CPP 30776540182, CPP30811530082, CPP30811530182, and CPP30811530282) but not the Umbrella Policy, UO 30776540182. Paragraphs j(5) and (6), l and m in the General Liability Policies are paragraphs k(3) and (4), m and n, respectively, in the Umbrella Policy.

3

5. Section I of the Policies at Exclusions, paragraph j, excludes coverage for "Damage to Property" as follows:

> (5) that particular part of real property on which you . . . are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. LR ¶5.

6. Section I of the Policies at Exclusions, paragraph l, excludes coverage for "Damage to Your Work" as follows:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. LR ¶6

7. Section I of the Policies at Exclusions, paragraph m, excludes coverage for "Damage to Impaired Property or Property not Physically Injured" as follows:

> "property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" . . . . LR ¶7.

8. Section IV, Condition 2 of the Milwaukee Policies[3] provides for the insured's Duties in the Event of Occurrence, Offense, Claim or Suit:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
>
> * * *
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
> * * *
>
> (2) Notify us as soon as practicable.

---

[3] Condition 5 in Umbrella Policy UO 30776540082.

> You must see to it that we receive written notice of the claim or "suit" as soon as practicable
>
> c. You and any other involved insured must:
>
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; LR ¶8

9. On or around June 21, 2000, ASI entered into a subcontract with Paschen, the general contractor, in which ASI was to provide labor and materials at the Performing Arts Center and at the Conference Center at Harper College. LR ¶ 9

10. Harper College claims that it "observed various symptoms of problems" during the course of the project which were not specifically identified until December 2004 and that these defects were a breach of Paschen's express and implied contractual obligations. LR ¶10

11. Harper College also claims that it sustained damage because defective work had to be replaced and/or had diminished the value of the Project. LR ¶11.

12. On June 5, 2006, after sending a letter to Paschen seeking its participation in an alternative dispute resolution process, the Board of Trustees of William Rainey Harper College No. 512 and the Illinois Capital Development Board, for the use and benefit of Board of Trustees of William Rainey Harper College No. 512 filed a law suit against Paschen, among others, seeking damages for breach of contract and other claims ("the Harper College Action"). LR ¶12.

13. On or around August 7, 2007, Paschen filed a Third-Party Complaint ("Paschen Complaint") against ASI and others alleging that ASI breached its subcontract agreement with Paschen and was obligated to indemnify Paschen against any judgment entered in the Harper College Action. LR ¶ 13.

14. On September 12, 2007 Paschen, through its counsel, tendered its defense of the Harper College Action to ASI and ASI's insurance carriers, including Milwaukee. LR ¶14.

15. On or around October 18, 2007, Milwaukee received and reviewed materials forwarded by Scottsdale Insurance Company, another one of ASI's insurance carriers. LR ¶15.

16. Following its investigation, Milwaukee denied Paschen's tender of the Harper College Action on or around December 28, 2007 on the following grounds:

   a. there are no allegations of "property damage" or "occurrence" as those terms are defined in the Policies in either the Harper College Action or the Paschen Complaint;

   b. even if "property damage" caused by an "occurrence" was alleged, it is unclear that the damage occurred during any of the relevant policy periods;

   c. in the alternative, coverage is excluded by Exclusions j(5), j(6), l, and/or m; and

   d. coverage is barred for failure to give proper notice. LR ¶16.

17. On December 6, 2007, ASI tendered its defense of the Paschen Complaint to Milwaukee. LR ¶17.

18. Milwaukee denied ASI's tender on December 28, 2007 on the following grounds:

   a. there are no allegations of "property damage" or "occurrence" as those terms are defined in the Policies in either the Harper College Action or the Paschen Complaint;

   b. even if "property damage" caused by an "occurrence" was alleged, it is unclear that the damage occurred during any of the relevant policy periods;

   c. in the alternative, coverage is excluded by Exclusions j(5), j(6), l, and/or m; and

   d. coverage is barred for failure to give proper notice. LR ¶18.

19. On January 2, 2008, Milwaukee filed its Complaint for Declaratory Relief in the United States District Court for the Northern District of Illinois. LR ¶19.

### IV.  ARGUMENT

To determine whether an insurer has a duty to defend an insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. If the facts in the underlying complaint fall within or potentially within the policy's coverage, the insurer's duty to defend arises. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the

6

policy's coverage. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 107-108, 607 N.E.2d 1204, 1212 (1992). Illinois courts have now also held that allegations contained in a third-party complaint can trigger the duty to defend. *American Econ. Ins. Co. v. Holabird & Root*, 2008 Ill. App. LEXIS 258, *32, 886 N.E. 2d 1166 (Ill. App. Ct. 1st Dist. 2008). As a result, the allegations in the Paschen Complaint should be considered to determine whether a duty to defend exists. Despite this extended platform, Milwaukee does not have a duty to defend or to indemnify either ASI or Paschen as neither the allegations of the Harper College Action nor the Paschen Complaint fall within or potentially within the coverage of the Milwaukee Policies.

### A. No Duty to Defend ASI

#### 1. There are no allegations of "property damage"/"occurrence" against ASI during any of the policy periods.

Among other counts, Harper College alleges that Paschen breached its contract and seeks repair and replacement costs as damages. LR ¶10. Similarly, Paschen alleges a breach of contract against ASI and seeks indemnity from ASI. The Milwaukee Policies apply to "property damage" only if the "property damage" is caused by an "occurrence" during the policy period. LR ¶2. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." LR ¶3.

Under Illinois law, a breach of contract claim does not constitute either an "occurrence" or "property damage" under a commercial general liability policy since it does not result from a fortuitous event. *Viking Construction Management, Inc. v. Continental Casualty Company*, 358 Ill. App. 34, 42, 831 N.E.2d 1,17 (1st Dist. 2005); see also *Stoneridge Development Company, Inc., et al. v. Essex Insurance Co.*, 2008 Ill. App. LEXIS 416 (2008), *Monticello Insurance Co., v. Wil-Freds Const., Inc.*, 277 Ill. App. 3d 697, 661 N.E. 2d 451 (2d Dist. 1995). Likewise, repair and replacement costs constitute economic loss and not "property damage." *Viking*, 358 Ill. App. 3d at 54-55.

7

In *Viking Construction*, recently re-affirmed by the Illinois Appellate Court (Second District) in *Stoneridge Development, supra,* the court held that breach of contract claims arising out of construction defects are not an "accident" or an "occurrence" covered by a commercial general liability policy, which is written to cover tort claims. *Viking*, 358 Ill. App. 3d at 43. If a contractor uses inadequate building materials or performs shoddy workmanship, he takes a calculated business risk that no damage will take place. *Id.* If damage occurs, it flows from the ordinary and natural consequence of the contractor's failure to perform the construction properly or as contracted but there is no coverage for such damages under a general liability insurance policy. *Id.*

In *Monticello, supra,* Wil-Freds, a general contractor, entered into a contract with the city of Naperville to construct a municipal building and a parking garage. Naperville later sued Wil-Freds for breach of contract, alleging numerous construction defects in the project. Wil-Freds tendered the defense of that lawsuit to its commercial general liability insurer, Monticello, which rejected the tender and filed a declaratory judgment action to determine coverage. Monticello contended, *inter alia*, that there was no "occurrence" under the terms of the policy because any "property damage" was only to the project under construction.[4] Wil-Freds, for its part, argued under the "true but unpleaded facts" doctrine that the complaint alleged damage to property other than the construction project itself. *Id.*

The court held that allegations of construction defects do not constitute an "occurrence" under a CGL policy:

> When construing CGL policies, courts define an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." The natural and ordinary consequences of an act do not constitute an accident.

*Id.* at 703 (citations omitted). Relying on that analysis, the court concluded that the complaint only alleged losses arising from Wil-Freds' defective construction, and that those losses were not

---

[4] The definition of "occurrence" in the Monticello policy was identical to the definition contained in the Milwaukee Policies. *Id.* at 699.

8

accidental, but rather were the result of the defective construction. "[T]he construction defects set forth in Naperville's complaint are the natural and ordinary consequences of the improper construction techniques of Wil-Freds and its subcontractors and, thus, do not constitute an occurrence within the definition in the CGL policy." *Id.* at 704; *see also Indiana Ins. Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 929-30, 615 N.E.2d 70, 73 (2d Dist. 1993). The same result applies here.

Harper College alleges that the relevant contracts were materially breached due to defects in workmanship. LR ¶¶10-11. All of the defects and losses identified by Harper, like those in *Monticello*, are the result of defective construction and not the result of an accidental loss or unexpected event. ASI performed its work, and if it was negligent, the damage that occurred flowed from the natural and ordinary consequences of its performance. That the College seeks as damages only the cost to repair or replace the defective work is further proof that the claims present nothing more than economic loss. Since the College does not seek recovery for "property damage" caused by an "occurrence" within the definition of the Milwaukee Policies, there is no coverage thereunder.

Moreover, even if it could be argued that there was "property damage" caused by an "occurrence" under the Milwaukee Policies, there is no allegation that it happened during the Milwaukee coverage periods from 1999 through 2003. Although the Harper College Action alleges that Paschen entered into a subcontract agreement with ASI on June 21, 2000, and that the College filed suit against Paschen on June 5, 2006, there are no allegations about *when* the alleged damages occurred. LR ¶¶9-12.

Milwaukee's last policy terminated on October 17, 2003. LR ¶1 at footnote 1. While the College "observed various symptoms of problems" during the project, they were not specifically identified until December 2004, after the work was purportedly completed. LR ¶10. The allegations do not bring the "occurrence" and "property damage," if any, within the period of any of the Milwaukee Policies.

9

### 2. In the alternative, coverage is barred by Exclusions in the Milwaukee Policies.

Even if the allegations in the Harper College Action triggered the Milwaukee Policies, coverage would be excluded under numerous Policy Exclusions. Section I, Exclusions paragraphs j(5) and (6) of the Milwaukee Policies state in relevant part that there is no coverage for "property damage" to:

>   (5)   that particular part of real property on which you are performing operations, if the "property damage" arises out of those operations; or
>
>   (6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

LR ¶5. If the "various symptoms of problems" observed by Harper constitute "property damage," it either occurred while ASI was "performing operations" or "arises out of those operations." Either way, Exclusion j(5) applies. Moreover, Harper College claims damage to property that "must be replaced and/or has diminished the value of the Project" which, if true, would be a direct result of ASI's incorrect performance on it thus bringing the matter within Exclusion j(6). LR ¶11. Again, either way, Milwaukee owes no duty to defend or indemnify ASI in the Harper College Action because the claim is excluded.

Moreover, to the extent that damage occurred *after* ASI's work was complete, the "products-completed operations hazard" coverage could be invoked. However, Exclusion l ("Damage to Your Work") provides that there is no coverage for:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

LR ¶6. If the Court concludes that the allegations of damages theoretically constitute "property damage" *arising out* of ASI's work, then, to the extent that the portions of the Performing Arts Center on which ASI completed operations are within the claim, the "Damage to Work" Exclusion expressly bars coverage.

10

Lastly, coverage is barred pursuant to Exclusion m, the "Damage to Impaired Property or Property not Physically Injured" Exclusion. Impaired property is defined in the Milwaukee Policies as "tangible property, other than 'your product' or 'your work' that is known or thought to be defective, deficient... if such property can be restored to use by: a. the repair, replacement, adjustment or removal of 'your product' or 'your work'..." The exclusion applies to:

> "property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"...

To the extent that ASI's work caused damage to the Harper College Performing Art Center and/or Conference Center, coverage is negated so long as the Center's usefulness can be restored by the repair or replacement of ASI's work. Since Harper College has alleged that "the defective work must be replaced ...," the alleged damages fall within the language of Exclusion m. LR ¶11.

### B. No Duty to Defend Paschen

#### 1. Paschen's status as an Additional Insured under the Milwaukee Policies.

Paschen's claims against Milwaukee are limited by its standing as an "additional insured" under the Milwaukee Policies. The Additional Insured Endorsement and Contractors Coverage Expansion Endorsement in the Milwaukee Policies[5] provide coverage for:

> a.  any person or organization you [ASI] are required by written contract, agreement, or permit to name as an insured, but only with respect to liability arising out of:
>
> > 1.  "your work" performed for that insured at the location designated in the contract, agreement, or permit...

In other words, Paschen is an additional insured under the Milwaukee Policies and is afforded coverage thereunder, but only to the extent that any liability assessed against Paschen arises out of

---

[5] Umbrella Policy UO 30776540182 contains a General Liability Following Form Endorsement. Pursuant to this Endorsement, any coverage provided under Milwaukee Policy No. CPP30776540182, including coverage for an additional insured, is likewise extended in Umbrella Policy UO 30776540182.

11

ASI's work performed pursuant to the sub-contract with Paschen. Milwaukee's policies are not available to defend or indemnify Paschen for Paschen's own negligence.

### 2. There are no allegations of "property damage"/"occurrence" against Paschen during any of the policy periods.

Just as Milwaukee owes no duty to defend or indemnify ASI because there is no "property damage" or "occurrence" within the meaning of the Policies, it owes no duty to defend or indemnify Paschen. The Harper College Action alleges that Paschen breached its contract with Harper College and that as a result of that breach, the College sustained damages in the amount of repair and replacement costs. LR ¶10-11.[6] For its part, Paschen seeks indemnity from ASI in the Paschen Complaint but alleges no new facts. As illustrated above, Illinois courts do not recognize breach of contract claims and repair/replacement costs as creating "property damage" or causing an occurrence and thus no coverage is afforded under the Milwaukee Policies.

In addition, there are no allegations in any pleading identifying *when* the alleged property damage occurred. Coverage is afforded under the policy only when the "property damage" occurs *during the policy period*. To the extent that there is no damage alleged that occurred during any relevant policy period, the Milwaukee Policies are not triggered thus no duty to defend or indemnify Paschen is owed.

### 3. In the alternative, coverage is barred by Exclusions in the Milwaukee Policies.

Even if the Harper College Action fell within the Insuring Agreements, coverage would be excluded under the Policy Exclusions enumerated above. The "Damage to Property" Exclusions, paragraphs j(5) and (6), the language of which is set forth in *LR* ¶5, bar coverage for any damage

---

[6] As noted above, Paschen has no coverage under the Milwaukee Policies for its own negligence. It is only if Paschen's liability arises out of the work of ASI that any coverage theoretically exists. For purposes of this section regarding potential obligations owed to Paschen, Milwaukee will assume that any alleged liability of Paschen arose out of the work of ASI.

12

that occurred during the course of the insured's work to property on which the insured was performing operations and parts of property that must be restored, repaired or replaced because the insured's work was incorrectly performed.[7] For the same reasons that the exclusion applies to ASI's work, it applies to ASI's work performed on Paschen's behalf. *See* Argument, infra, at pages 9-11. Thus, there is no duty to defend or indemnify Paschen.

Finally, coverage is barred by Exclusion m, the "Damage to Impaired Property or Property not Physically Injured" Exclusion, the language of which is set forth in LR ¶7. To the extent that ASI's work performed on Paschen's behalf caused damage to the Harper College Performing Arts Center and/or Conference Center, coverage is negated so long as its usefulness can be restored by the repair or replacement of Paschen's work. Since Harper College alleges that the "defective work must be replaced and/or has diminished the value of the Project," the exclusion applies. LR ¶11.

### 4.    There is no duty to defend or indemnify Paschen due to late notice.

Under Illinois law, insurance policies are to be construed as a whole, giving effect to every provision if possible, because it must be assumed that every provision was intended to serve a purpose. *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 362, 860 N.E.2d 307, 314 (2006); see also *Country Mutual Insurance Co., v. Livorsi Marine Inc.*, 222 Ill 2d 303, 311, 856 N.E.2d 338, 342-343 (2006). If words used in the policy, given their plain and ordinary meanings, are unambiguous, they must be applied as written. *Id.* Condition 2 of the Milwaukee Policies provides that "you" *i.e.*, Paschen as an additional insured, must notify Milwaukee "as soon as practicable" of (1) an "occurrence" that may result in a claim, (2) a claim that has been made, or (3) "suit" that has been brought against any insured. LR ¶8. This condition requires the insured to

---

[7] The definition of "your work" in the policies includes "work performed...on your behalf." *See, e.g.*, Milwaukee Complaint, Doc. No. 1, at Exhibit A, Section V, ¶21. Thus, ASI's work performed on Paschen's behalf falls within the language of the exclusion to bar Paschen's claim.

13

"immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'." *Id.*

Illinois courts have interpreted "as soon as practicable" to mean "within a reasonable time." *Id.* The test for reasonableness of the notice is whether any reasonably prudent person could foresee a lawsuit upon receipt of the first notice that would involve the insurer's policy and would either contact his attorney or his liability carrier. *Millers Mutual Insurance Association of Illinois v. Graham Oil Co., et al.*, 282 Ill. App. 3d 129, 141, 668 N.E.2d 223, 231-232 (2nd Dist. 1996) citing *Twin City Fire Ins. Co. v. Old World Trading Co*, 266 Ill. App. 3d 1,7, 639 N.E.2d 584, 587 (1st Dist. 1993). Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy. *Country Mutual*, 222 Ill.2d at 311, citing *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 323-23, 121 N.E.2d 509, 512 (1954).

Paschen tendered its defense of the Harper College Action to ASI on September 12, 2007. LR ¶14. Harper College claims that prior to commencing its action against Paschen, it sent a letter to Paschen requesting its participation in the process of alternative dispute resolution of the claims in the Harper College Complaint. LR ¶12. At that point, Paschen was aware of a claim and its duty to notify Milwaukee was triggered.

Paschen had yet another opportunity to put Milwaukee on notice when Harper College filed its Complaint on June 5, 2006 *Id.* However, it was not until September 12, 2007, fifteen months after suit was filed and after it had filed its Third-Party Complaint against ASI, that Paschen gave notice to Milwaukee LR ¶14 A fifteen month delay is unreasonable as a matter of law. *See IMC Global v. Continental Ins. Co., et al*, 378 Ill. App. 3d 797, 883 N.E.2d 68 (1st Dist. 2007) (thirteen month delay for initial suit and six month delay for subsequent lawsuits); *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 456 N.E.2d 348 (1st Dist. 1983) (five months); *Illinois Valley Minerals Corp v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d 296, 388 N.E.2d 253 (3rd Dist. 1979) (six months).

14

Paschen's failure to comply with Condition 2 of the Policies bars coverage under the Milwaukee Policies. Milwaukee has no duty to defend Paschen and consequently owes no duty to indemnify.

## V.　CONCLUSION

Milwaukee is entitled to summary judgment because there are no genuine issues of material fact and Milwaukee is entitled to judgment as a matter of law. The allegations in the Harper College Action reveal that the Milwaukee Policies are not triggered because there was no "property damage" caused by an "occurrence" during the Policy periods.

Strictly in the alternative, if the Policies are deemed to be triggered, there are multiple exclusions which bar coverage. ("Damage to Property," "Damage to Your Work" and "Damage to Impaired Property or Property not Physically Injured").

Finally, Milwaukee did not receive timely notice of a claim or suit from Paschen and thus it has violated Condition 2 of the Policies.

MILWAUKEE MUTUAL INSURANCE COMPANY
n/k/a MILWAUKEE INSURANCE COMPANY

By: _____/s/ Neal R. Novak_____
　　　　One of its Attorneys

**NOVAK LAW OFFICES**
Neal R. Novak, Esq. (#06181620)
Matthew R. Wildermuth (#06202106)
Renata Biernat (#06285752)
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
(312) 425-2500 Telephone
(312) 425-2525 Facsimile

15